41 Ill.2d 316 (1968)
243 N.E.2d 193
THE EXCHANGE NATIONAL BANK OF CHICAGO, Appellant,
v.
LAWNDALE NATIONAL BANK OF CHICAGO et al., Appellees.
No. 41103.
Supreme Court of Illinois.
Opinion filed November 22, 1968.
*317 BROWN, DASHOW, LANGELUTTIG, JOSEPH & ARONS, of Chicago, (NORMAN H. ARONS, of counsel,) for appellant.
PEDERSEN & HOUPT, A. EDMUND PETERSON, and SHELDON RUBIN, all of Chicago, (RICHARD V. HOUPT and JAMES K. STUCKO, of counsel,) for appellees.
CORRIGAN, MACKAY, QUETSCH AND O'REILLY, of Wheaton, (JOHN R. MACKAY, of counsel,) for amicus curiae.
Reversed and remanded.
Mr. JUSTICE WARD delivered the opinion of the court:
The appellant, Exchange National Bank of Chicago, as trustee under a trust agreement dated May 3, 1966, brought an action of ejectment on February 23, 1967, against the appellee, Lawndale National Bank of Chicago, and others. We shall hereafter refer to the appellant as Exchange and the appellees as Lawndale. Exchange claimed in its complaint that by virtue of a deed in trust which was recorded on May 5, 1966, it was the fee simple owner of premises commonly known as 6937 South Park Avenue, Chicago, Illinois. It asserted that any interest claimed by Lawndale under a certain deed in trust, which was recorded on January 5, 1966, was inferior to that of Exchange because Exchange's title was derived through a chain of title originating in a grant from the government of the United States, and the chain of title through which Lawndale claims did not so originate.
The complaint stated that the premises had been unoccupied and vacant until March 18, 1965, at which time the appellees wrongfully and without Exchange's consent entered into possession. The complaint prayed that Exchange's title be judged superior to any right, title or interest Lawndale might possess and that the premises be returned to Exchange, together with nominal damages.
In answer, Lawndale admitted that Exchange claimed through a chain of title in fee simple originating in a grant *318 from the United States, but denied that Lawndale's right, title or interest was inferior to the title and right to possession claimed by Exchange and asserted that its title and right to possession were superior by virtue of its affirmative defense under the statute often described as the Illinois Marketable Title Act. Ill. Rev. Stat. 1967, chap. 83, par. 12.1-12.4.
A typical marketable title statute provides that if one has a record chain of title for a declared period, such as the Illinois period of 40 years, and no other person has filed a notice of claim to the property during the 40-year period, then all conflicting claims based on any title transaction prior to the 40-year period are either barred or extinguished. The purpose of the legislation is to permit reliance on a chain of title which appears to be clear and undoubtful for a 40-year period prior to examination and by rendering harmless ancient defects which may appear in the record before and beyond the 40-year period.
Section 1 of our Act provides: "No action based upon any claim arising or existing more than 40 years before the commencement of such action shall be maintained, either at law or in equity, in any court to recover any real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate when such holder of the record title and his grantors immediate or remote are shown by the record to have held chain of title to said real estate for at least 40 years before the action is commenced, unless such claimant, by himself, or by his attorney or agent, or if he be a minor or under legal disability, by his guardian, conservator, trustee, either parent, or any other person acting in his behalf shall within 40 years after the claim upon which such action is based arises, file in the office of the recorder of deeds of the county wherein such real estate is situated, a verified statement definitely describing the real estate involved, the nature and extent of *319 the right or interest claimed, and stating the facts upon which the same is based; Provided, however, that the holder of the record title to such real estate shall not be entitled to the protection of this Act if the real estate is in the adverse possession of another."
The same section describes those who, in addition to persons holding by direct conveyance, are considered to hold chain of title: "For the purposes of this Act, any person who holds title to real estate by will or descent from any person who held the title of record to such real estate at the date of his death or who holds title by decree or order of any court, or by deed issued pursuant thereto, i.e., by trustee's, trustee's in bankruptcy, conservator's, guardian's, executor's, administrator's, receiver's, assignee's, master's in chancery, or sheriff's deed shall be deemed to hold chain of title the same as though holding by direct conveyance." Ill. Rev. Stat. 1967, chap. 83, par. 12.1.
Section 4 provides that the Act is to be liberally construed to "effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title as described in section 1 of this Act * * *." It states, too, that: "The claims extinguished by this Act include any and all interests of any nature whatsoever, however denominated, whether vested or contingent, whether present or future, whether such claims are asserted by a person sui juris or under disability or might be asserted by a person not yet in being, whether such person be within or without the State, and whether such person be natural or corporate, or private or governmental." Ill. Rev. Stat. 1963, chap. 83, par. 12.4.
In pleading the Act, Lawndale alleged that the record title through which Exchange claims was acquired by one Frederick E. Von Ammon by a deed dated October 25, 1899, and that by a deed dated November 4, 1965, which was recorded on November 19, 1965, Frederick E. Von Ammon had conveyed title to one Ben Musikantow and by mesne *320 conveyances title passed to Marilyn Blonsky, through and under whom Exchange now claims. It set forth that though Von Ammon held his title for a period in excess of 40 years, i.e., from 1899 to 1965, Lawndale through its grantors also held a record chain of title for at least 40 years prior to 1965 but such chain originated subsequent to the commencement of Von Ammon's chain in 1899. Lawndale admitted that it and Exchange do not have a common source of title. Lawndale further stated that no verified statement of claim as required under the Act had been filed by Von Ammon or in fact by anyone and that Exchange, therefore, could not maintain its suit as neither it nor its predecessors in title kept its claim alive by filing a preserving statement of claim within 40 years after its interest arose or was created.
Subsequently, both parties moved for judgment on the pleadings. Lawndale argued that the Act was applicable and since there were no questions of fact that Exchange's complaint should be dismissed. Exchange agreed that there was no question of fact raised by the pleadings but contended that (1) the Act did not apply to a chain of title founded upon a "wild deed," which Exchange considered to be a chain of title not originating in a grant from the United States, and (2) that the Act is unconstitutional. The circuit court granted Lawndale's motion and Exchange has appealed directly to this court under Rule 302(a) (Ill. Rev. Stat. 1967, chap. 110A, par. 302(a)) declaring that questions arising under the constitutions of the United States and the State of Illinois are involved.
The appellant argues here, too, that the Act is violative of the constitution of the United States and the State of Illinois, and, apparently alternatively, contends that the Act is not to be applied in the case of record chain of title founded on a "wild deed."
We will not recite the appellant's argument challenging the constitutionality of the Act, for we reach a conclusion *321 without the necessity of considering that issue. This court has often said that constitutional questions will not be considered if the cause can be determined on other grounds. See e.g., People v. Dixon, 28 Ill.2d 122; Osborne v. Village of River Forest, 21 Ill.2d 246; City of Detroit v. Gould, 12 Ill.2d 297.
We have here two independent chains of title, a situation which has been described as "theoretically worrisome, though rarely occurring." (Webster, "The Quest for Clear Land Titles" (1965) 44 N.C.L. Rev. 89, 110.) Exchange's title is derived through a chain originating in an original grant from the United States and this title was held by Von Ammon for a period in excess of 40 years, i.e., from 1899 to 1965. Lawndale through its grantors also held a record chain of title for at least 40 years prior to 1965. The pleadings set forth that the chain of Lawndale originated subsequent to the acquisition by Von Ammon in 1899 but do not further describe its origin as to time or source. Exchange and Lawndale do not have a common source of title and at least so far as Exchange's title is concerned, Lawndale's chain of title has been founded on a "wild deed."
Commentators in considering marketable title acts have recognized the possibility of two record titles existing at one time because of a "wild deed" and in some States the possibility of this occurrence has been provided for by statute. (See Simes and Taylor, The Improvement of Conveyancing by Legislation, p. 353, 1960; Webster, The Quest for Clear Land Titles, (1965) 44 N.C.L. Rev. 89.) Our statute does not so provide.
A consideration of our Act, including the section declaring the legislative purpose of "simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title" leads us to conclude that the Act contemplated the existence of only one record chain of title holder. We deem that the application of the statute in a case involving two competing record chains of title as are *322 presented here was not intended. Hence, we judge that Lawndale cannot use the Act as a defense to the action.
Were we to hold otherwise it could result in a "wild deed" being enabled to serve as the foundation of a new record chain of title, so that it, as the more recent 40-year chain of title, would be entitled to the benefit of the Act. This could result in unwelcome holdings and possible constitutional complications, for it would be then possible for the grantee of a complete and even fraudulent stranger to title to divest the title of a record owner, who may have satisfied the usual responsibilities of ownership, such as paying taxes, but who did not file a statement of claim to preserve his interest, as the statute requires. (See Barnett, Marketable Title Acts  Panacea or Pandemonium? (1967) 53 Cornell L. Rev. 45, 57.) The legislature not having so provided, we believe that it was not intended that a chain could be founded on a wild deed, or as one court expressed it, "on a stray, accidental or interloping conveyance." (Cf. Wichelman v. Messner, 250 Minn. 88, 83 N.W.2d 800.) Too, the legislative purpose under the Act of "simplifying and facilitating land title transactions" would hardly be furthered by a contrary holding. A purchaser, though he might trace title back to an original grant from the United States and might have examined grantor-grantee indices, could not be assured that a chain of title based on a "wild deed" did not independently exist, to the prejudice of his rights.
On the record before us we cannot determine the rights of the appellant and the appellee. We, accordingly, remand the cause to the circuit court for a determination, apart from the Act, of the merits of the claims of the parties. The judgment of the circuit court of Cook County is reversed and remanded for further proceedings consistent with this opinion.
Reversed and remanded, with directions.