THOMAS DAVIS, Plaintiff-Appellant, *v.* HAVANA MINERAL WELLS, INC., Defendant-Appellee.

Fourth District   No. 13306

Opinion filed April 7, 1977.—Modified on denial of rehearing June 22, 1977.

Heyl, Royster, Voelker & Allen, of Peoria (Richard N. Molchan and Larry T. Frantz, of counsel), for appellant.

Howard S. White, of White & Alexander, of Havana, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff Thomas Davis brought suit on behalf of himself and all similarly situated lot owners in Quiver Lake Chautauqua Park (hereinafter the Park) against defendant Havana Mineral Wells, Inc., the owner of the portions of the Park not platted as lots, for a declaratory judgment recognizing an easement in such lot owners for the use and enjoyment of the unplatted portions of the Park and for an injunction restraining defendant from interfering with the lot owners' use and enjoyment of the unplatted portions of the Park. After hearing, the trial court ruled that defendant was the owner in fee simple of the unplatted portions of the Park, that it and its predecessors in title had exercised complete control over those areas since about 1912, and that the easement claimed was barred by the statute commonly referred to as the Illinois Marketable Title Act (Ill. Rev. Stat. 1971, ch. 83, pars. 12.1—12.4), and denied the injunctive relief sought. Plaintiff appeals.

The record indicates that on July 1, 1912, a plat of Quiver Lake Chautauqua Park was recorded in Mason County, Illinois. On October 1, 1912, in a warranty deed, the developer of the Park, Quiver Lake Chautauqua Association, conveyed a lot to Kathryn Selters "as shown on the Plat." The Selters deed included the following covenant:

"It is covenanted and agreed by the grantor herein, that the land in the said Park lying West of the road shown and designated on said Plat as 'Lake Drive,' and extending to the meandering East line of Quiver Lake, shall be, at all times, held for the use and enjoyment of all persons owning lots in said Park, and for the benefit of said lots; and that no buildings or structures shall be constructed thereon which shall obstruct the view of said Quiver Lake from said 'Lake Drive.' This covenant is made for the benefit of the land herein conveyed, and shall run with the land and be binding upon the grantor herein, its successors and assigns."

The deed also stated that the conveyance was "made subject to the terms and conditions of a certain lease for 99 years, entered into by and between the grantee and grantor herein, of even date herewith."

In 1959, plaintiff and his wife purchased this lot from successors in title of Kathryn Selters. The deed conveying the property to them did not refer to any such covenant or lease, however.

Two other deeds containing language identical to that of the Selters deed also appear in the record. One of the deeds, dated October 1, 1912, conveyed a lot to Mattie G. Schilling. However, the 1961 deed conveying the lot from successors in title of Mattie G. Schilling did not include the covenant or refer to any lease. The other deed, dated October 19, 1912, conveyed another lot in the Park to another owner.

The record also includes two identical documents purporting to be 99-year leases for two lots in the Park. One of the leases was for the lot purchased by Mattie G. Schilling and was dated October 1, 1912. The other lease, dated July 13, 1913, was for a lot for which the deed of conveyance to the original individual lot owner is not in the record.

Each lease provided that "in consideration of the sum of ONE DOLLAR and other good and valuable consideration received," the subject lot was leased to the Association for a period of 99 years. During this period the lot owner would be permitted to use the property if the use were in accordance with the Association's bylaws. In addition, the parties to each lease agreed that the Association would provide a caretaker for the Park to be paid for by a tax levied on the lot owner, that the lot owner could rent the premises to others for profit and the Association would attend to the rental in return for 10% of the rent, and that the Association would be allowed to cross the lot with sewer lines and other improvements for which the lot owner would pay a proportionate share. Both leases also contained the following provision:

> "It is covenanted and agreed by the parties hereto, that the said Park herein referred to, and of which the premises hereby leased form a part, shall be used for Chautauqua and Resort purposes; and that, should said second party [the Association], its successors or assigns, for any reason, cease to use said Park for Chautauqua or for Resort purposes for a period of three consecutive years, this lease shall, at the option of said first party [the lot owner], be terminated."

On August 4, 1926, the name of Quiver Lake Chautauqua Association was changed to Quiver Lake Mineral Springs, Inc. Subsequently, in 1931, Havana Mineral Wells, Inc., was organized as a corporation and purchased all of the Park except the platted lots which had been sold to individual lot owners.

On February 16, 1972, Havana Mineral Wells, Inc. published a

newspaper notice stating that all leases, claims, and easements on its property were cancelled. "No trespassing" signs were subsequently posted on unplatted portions of the Park and a road was barricaded. Plaintiff filed the instant suit on July 7, 1972.

Plaintiff bases his claim that the lot owners have an easement in all of the unplatted portions of the Park on the covenant found in the three deeds to original individual lot owners, including the Selters deed in his own chain of title, the provisions of the 99-year leases referred to in those deeds, and the plat of the Park.

■■  We first consider the 99-year leases. Plaintiff argues that since identical leases were found for two of the lots, his lot and all of the other lots in the Park must have been purchased subject to the same lease arrangement even though the leases have not been found. A lease, unlike a covenant which may be binding on all lot owners in a development even though it does not appear in all of the deeds, requires privity. Thus, in order to derive any rights from the lease provisions, each lot owner would have to prove the existence of a lease for his lot.

Even if identical leases were found to exist for plaintiff's lot and all of the other lots, however, it is unclear whether the leases were ever enforceable as such. They certainly were not leases in the usual sense since possession of the property remained with the lessor. The record indicates that none of the provisions of the leases have been performed for many years. Moreover, the leases provided that they were terminable at the option of the lot owner if the Park were used for other than chautauqua or resort purposes for 3 consecutive years.

Finally, while plaintiff argues that the leases gave the lot owners the right to use all unplatted portions of the Park, there is no language in the leases which appears to have conveyed such a right. The only language in the leases which referred to the use of the Park is the provision which stated that the Park was to be used for chautauqua or resort purposes and that the leases could be terminated at the lot owners' option if the Park were used for other purposes.

We next consider plaintiff's contention that the plat filed in 1912 shows that the unplatted areas of the Park were set aside for the use of the lot owners. While various uses were designated on the plat for parts of the Park ("picnic campus," "croquet grounds," "athletic field," "fraternity park," "boat landing," "bathing beach"), the plat did not provide any indication of who was to be permitted to use these areas except for the area west of Lake Drive which was designated "public lawn." Thus, the plat does not purport to grant use of any area beyond that referred to in the covenant.

We now consider the effect of the covenant itself. It provided that the land from the west side of Lake Drive to the eastern line of Quiver Lake

was to be held for the use and enjoyment of the lot owners. It did not refer to any other unplatted portions of the Park. The trial court found that enforcement of the covenant was barred by the Illinois Marketable Title Act. (Ill. Rev. Stat. 1971, ch. 83, pars. 12.1—12.4.) The Act, which was adopted in 1959, bars a claim arising more than 40 years before commencement of the action based on such claim unless a statement of the claim was recorded within the 40-year period or the claim falls within one of the exceptions to the Act. Holders of claims more than 40 years old at the time of adoption of the Act were given a 2-year grace period in which to file statements of those claims. The record in the instant case does not indicate that any such statements of claims have been filed by the lot owners in the Park.

Plaintiff argues that nevertheless the statute does not bar the instant action because (1) the claim did not arise until the public notice was filed by defendant in 1972 and (2) defendant is estopped from asserting the statute as a defense by its actions in allowing the lot owners to use the area referred to in the covenant without interference until 1972. To accept either of these arguments would be to vitiate the Act's legislative purpose of "simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title * * *." Ill. Rev. Stat. 1971, ch. 83, par. 12.4.

■■ The statute clearly distinguishes between an action and the claim or interest upon which the action is based. Thus, in the instant case, the action arose in 1972 when defendant published notice that all easements on its property were cancelled but the claim arose when the covenant granting the easement went into effect. The three deeds in the record which contain the covenant are all dated 1912. No deeds less than 40 years old have been found to contain the covenant.

There is also no indication in the statutory language that estoppel was intended to be recognized as a bar to operation of the Act. Knowledge of the existence of a claim on the part of the record owner of the property appears not to affect the operation of the statute, which makes no distinction between bona fide purchasers of property and purchasers with notice of existing claims. See Rohde, *Illinois Marketable Title Act*, 39 Chi.-Kent L. Rev. 49, 61 (1962).

■■ Undisputed evidence relied upon by plaintiff upon the issue of estoppel, however, showed that lot owners had built and continued to keep on the beach area west of Lake Drive large boxes for the storage of oars and other items of equipment. The Act excepts from its coverage any easement "the existence of which * * * is apparent from or can be proved by physical evidences of its use * * *." (Ill. Rev. Stat. 1971, ch. 83, par. 12.3(c).) The covenant in the deed to Kathryn Selters, a predecessor in title to plaintiff, created an easement in the lot owners in

the area of the Park west of Lake Drive. The boxes were physical evidence which proved the use of that easement by the lot owners. We, therefore, conclude that the easement created in the covenant was not barred by the Act. Plaintiff was entitled to a declaratory judgment recognizing this easement.

■■■ We recognize that we are deciding the case upon a point not raised at trial and not argued by plaintiff-appellant in this court. Ordinarily such a point would be waived. (Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7).) The statute in question, however, is relatively new, complicated and one upon which the courts of this State have made few interpretive decisions. We are not aware of any decision of any court of any State having a similar statute that rules upon a set of facts closely resembling those of this case. The proper public purpose of the Act is obviously to make real estate more marketable. In accomplishing that purpose, the Act defeats and cuts off interests in real estate. We deem it important that we exercise great care to see that the Act is not ruled to operate in a way which is contrary to its intent and which works a hardship. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) Although the issue of the constitutionality of the Act is not raised in this case, we note that in *Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316, 243 N.E.2d 193, the supreme court expressly refrained from passing upon that question.

The judgment of the trial court is reversed and the case remanded. The trial court is directed to enter a decree declaring the lot owners to be entitled to the use of the easement described in the covenant of the Selters' deed. We are not able to determine from the record the location of the road alleged to have been barricaded. Upon remand the trial court should hold a hearing to determine whether that road is a platted road or one in which the lot owners have obtained a prescriptive right. If either of the foregoing conditions are found to exist, the trial court should order the issuance of an injunction directing defendant to remove the barricade.

Reversed and remanded.

CRAVEN, P. J., and TRAPP, J., concur.