DARYLE J. ROWLAND et al., Plaintiffs-Appellees, v. SHORELINE BOAT & SKI CLUB, Defendant-Appellant and Counterplaintiff-Appellant (Hortense Pfaffman et al., Intervenors-Appellees; Daryle J. Rowland et al., Counterdefendants-Appellees).

Third District   No. 3—88—0725

Opinion filed August 2, 1989.—Modified on denial of rehearing September 15, 1989.

John L. Cantlin, P.C., of Ottawa (Eric B. Deobler, of counsel), for appellant.

William J. Wimbiscus, of Boyle, Goldsmith, Shore & Bolin, of Hennepin (Linn C. Goldsmith and John S. Duncan, of counsel), for appellees Hortense Pfaffman, William Pfaffman, and Ellen Rosenzweig.

John S. Duncan and Douglas A. Gift, both of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, for appellee Daryle J. Rowland.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiffs, Daryle Rowland and Sandra Rowland, brought a quiet title action against the defendant, Shoreline Boat & Ski Club, to determine the northern boundary of lots 1, 2, and 3 in block 2 of Green's Addition to the City of Ottawa, Illinois. See attached plat. The plaintiffs are the installment land contract purchasers of the three lots in question, and the defendant is the record title holder to real estate situated to the east of the plaintiffs' property. The defendant additionally contends that it holds title to a section of property which lies to the north of lots 1, 2, and 3, which is adjacent to the Fox River. Subsequent to the commencement of the case, the record title holders and contract sellers of lots 1, 2, and 3, Hortense Pfaffman, William Pfaffman, and Ellen Rosenzweig, petitioned to intervene in the proceedings which the trial court allowed. For purposes of this appeal, the interests of the plaintiffs and intervenors are identical. Thereafter, the intervenors filed a motion for summary judgment. The trial court, relying on the original plat of the intervenors' property, granted summary judgment, finding that the northern boundary of lots 1, 2, and 3 was the thread of the stream of the Fox River. Since the trial court record is void of any evidence showing a contrary intent on the part of the original grantor of the subject premises, we affirm.

The original plat of Green's Addition to the City of Ottawa was drawn by G.G. Bullock in 1835 and was recorded in La Salle County. The Bullock plat, which is included in the text of this opinion, shows lots 1, 2, and 3 in block 2 abutting the Fox River. Notably, the length of the end lots on each block bordering the Fox River contains a "+" symbol, which indicates no limit to the length of the lots as they extend to the river. At the time the Bullock plat was completed, title to all of the real estate presently owned by the intervenors and the defendant was held by Henry Green.

The intervenors trace title back to Henry Green in 1834. Through various conveyances in about 1847, the land now owned by all parties, except for lot 2, was owned by William Cushman. Lot 2 had previously been conveyed by Henry Green to Jeremiah Price and was described in the deed as a "water lot." Eventually, lots 1, 2, and 3 were conveyed to Oliver Gray in 1854. The three lots were then reconveyed several times, including the last conveyance to George and

Sara Brooks. George died in 1950 and Sarah died in 1980. Sarah's heirs, the intervenors, then sold the lots to the plaintiffs.

The defendant traces title back to William Cushman, who conveyed property to the Ottawa Manufacturing Company in 1867, which was described in the following manner:

"[T]hat part SE ¼ or part NW ¼ of said Sec. Sec. 12, T. 33 N., R. 3E. of 3rd P.M., south of said canal [Illinois & Michigan Canal] *and north of Blocks 1 and 2* and Grafton Street *in Green's Addition to Ottawa* containing 8.52 acres \*\*\*." (Emphasis added.)

Until 1939, each succeeding instrument and conveyance in the defendant's chain of title used essentially the same description. A metes and bounds survey, which was not recorded, was then included in a deed from the National Fireproofing Corporation to Alexander and Katherine McLean on March 29, 1939. This conveyance gave the following description:

"Known as and being a part of the N.W. ¼ of Sec. 12 Twp. 33 N., Range 3 E. of the 3rd P.M., starting for the same at the center of said section, thence along the east line of said quarter section, North 820 feet to a monument in the Northeast corner of Block 1 in Green's Addition to Ottawa for the place of beginning; thence (1) along the West line of said quarter section 996.7 feet to a monument on the South line of the 90-foot reserve of the Illinois and Michigan Canal; thence (2) along the South line of said 90-foot reserve North 74 degrees 27 minutes West 227 feet, more or less, to the Easterly side of Fox River; thence (3) along the Easterly side of Fox River southerly and southwesterly 1095 feet, more or less, *to the Northerly line of said Block 2 in Green's Addition to Ottawa thence (4)* Easterly along *the Northerly line of said Block 2* and along the Northerly end and Easterly side of Grafton Street, 290 feet, more or less, to a monument in the Northwest corner of [*sic*] B-ock [*sic*] 1 in said Green's Addition; *thence (5) along the North line of said Block 1* South 86 degrees 36 minutes East 483.85 feet to the place of beginning, containing 8.52 acres be the same more or less, and being all of that part of said N.W. ¼ lying South of the Illinois and Michigan Canal, East of Fox River and *North of Blocks 1 and 2 and Grafton Street in Green's Addition to Ottawa*; being the same premises described at item 6 in that deed from National Fire Proofing Company to National Fireproofing Corporation recorded in Book 690 at Page 101 as aforesaid." (Emphasis added.)

After 1939, the premises again went through several conveyances with substantially the same description until Claud and Lucille Waite conveyed the property to the defendant on September 8, 1958.

On appeal, the defendant maintains that the trial court erred in relying on the 1835 Bullock plat since the diagram is inaccurate because it purportedly shows the Fox River in a different location than it exists today or could have existed in 1835. To support its proposition, the defendant relies on a 1932 Army Corps of Engineers' topographical survey which is not recorded in the recorder's office of La Salle County, the affidavit of a civil engineer, and the affidavit of a surveyor. The evidence produced by the defendant to attack the correctness of the 1835 plat, however, is immaterial to the rule of law that is applicable to this case. The only evidence of any import is evidence which reveals Green's intent when he conveyed the land in 1836. The 1835 plat is the only recorded public document of Green's Addition at the time Green sold the subject property. The two affidavits and the 1932 Army Corps of Engineer survey do not in any way reveal what Green's intent was in 1836.

Therefore, the sole issue presented by this appeal is to determine what Harold Green, the original grantor, intended the northern boundary of lots 1, 2, and 3 in block 2 to be when he conveyed the property. The generally accepted rule in Illinois is that unless an intention to the contrary is manifest, a grant of land bounded on a stream will convey the land to the middle thread of the stream. (*Heckman v. Kratzer* (1976), 43 Ill. App. 3d 844.) Here, the 1835 Bullock plat showed the northern boundary of lots 1, 2, and 3 to be the Fox River. Green at that time owned all of the property in question up to the Fox River. Further, the use of the "+" symbols on the plat reveals an intent to extend the length of the lots to the river. If the northern boundary of lots 1, 2, and 3 were the bluff line or some other fixed point as argued by the defendant, an exact measurement would have been all that was necessary without the use of "+" symbols. Additionally, Green, in a deed conveyed one day after the preparation of the 1835 Bullock plat, referred to lot 2 as a "water lot." In short, there is nothing in the record that shows a contrary intent on the part of Green other than to extend the northern boundary of the three lots to the Fox River. Thus, the trial court was correct in granting the intervenors' motion for summary judgment.

Finally, the defendant argues that summary judgment in favor of the intervenors was inappropriate because of its affirmative defense and counterclaims. The defendant's affirmative defense al-

leges, pursuant to section 13–118 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13–118), that the 40-year limitation on claims to real estate had expired, thus barring the plaintiffs' quiet title action. This statute, however, does not apply in this case because there are competing chains of title. (*Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316.) Further, the defendant's counterclaims, which are based on theories of adverse possession, actual possession and payment of taxes, payment of taxes on vacant land, and accretion, are insufficient as a matter of law and undisputed fact. Initially, with respect to all of the counterclaims, the defendant fails to expressly describe the real estate which it claims through its various theories. More specifically, the defendant's attempt to argue that it acquired the property through adverse possession fails since the defendant did not allege facts to prove hostile and exclusive possession of the land for the requisite period. Second, the theories of actual possession and payment of taxes (Ill. Rev. Stat. 1987, ch. 110, par. 13–109), and payment of taxes on vacant land (Ill. Rev. Stat. 1987, ch. 110, par. 13–110), are inapplicable to this case. Both theories require color of title and no color of title exists where the property is not described with reasonable certainty and where there is a dispute over a boundary line that has never been definitely established. (*Chicago & Northwestern Ry. Co. v. Kennedy* (1931), 344 Ill. 309.) Lastly, the defendant's counterclaim of accretion cannot prevail against the intervenors, who, as riparian owners of the subject premises, are entitled to all accretions along the bank of the Fox River.

For all of the foregoing reasons, the decision of the La Salle County circuit court is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.