NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                       

           Docket Nos. 78726, 78730 cons.--Agenda 5--January 1996.

   BARBARA TRENT et al., Appellants, v. RALPH SAMUEL  WINNINGHAM, Appellee.

                         Opinion filed June 20, 1996.

                                       

     JUSTICE FREEMAN delivered the opinion of the court:

     This appeal is from a circuit court order containing a judgment which,

in part, declared a provision of the Illinois Parentage Act of 1984

unconstitutional. See 134 Ill. 2d R. 302(a). We remand the cause with

directions.

                                   BACKGROUND

     In 1991 Barbara Trent filed a paternity suit against Ralph Winningham.

Trent alleged, and Winningham later conceded, that he fathered a son born to

Trent four years earlier. Part of the relief that Trent sought was

retroactive child support under section 14(b) of the Parentage Act (750 ILCS

45/14(b) (West 1992)).

     The trial judge denied retroactive support for three reasons: Trent was

not entitled to it; Trent's claim was time-barred; and section 14(b) was

unconstitutional anyway because it violated federal and State equal

protection guaranties. The trial judge himself had suggested to the parties

that the section might be unconstitutional and asked them to brief the issue.

His reasoning: the section caused unwed fathers to be treated differently

from divorced fathers who, under the Illinois Marriage and Dissolution of

Marriage Act, did not have to pay similar support.

     The other grounds for the denial of support did not turn on finding the

section unconstitutional. Denial of Trent's claim on the merits actually

followed consideration of factors directed by section 14(b). As for being

time-barred, the trial judge characterized Trent's claim as one for her own

reimbursement of child-rearing expenses, a claim which the Parentage Act

required to have been made within two years of her son's birth. 750 ILCS 45/8

(West 1992).

     The Cook County State's Attorney, who had argued on Trent's behalf for

the constitutionality of section 14(b), appealed. So did the Illinois

Attorney General who had intervened (see 134 Ill. 2d R. 19) to represent the

State's interest in upholding the section. Both asserted that a direct appeal

lay to this court because section 14(b) had been held unconstitutional. See

134 Ill. 2d R. 302.

     The State's Attorney's opening brief argues not only that the trial

judge was wrong to find the section unconstitutional but also that

retroactive relief should not have been denied for either alternative reason

given. The brief also challenges a different aspect of the trial judge's

order. Retroactive child support was only part of the relief Trent had

sought. The order also contains a current support award. The State's Attorney

argues that the level of current support was set too low because the trial

judge failed to consider the child's best interests.

     Winningham has moved to strike that part of the State's Attorney's

brief. We decided to dispose of the motion in the course of this appeal.

                                    ANALYSIS

     Winningham is right to argue that whether the trial judge ignored some

factor in awarding current support has nothing to do with Trent's retroactive

support claim. And it is the claim for retroactive support that spurred

consideration of section 14(b)'s constitutional validity upon which our

jurisdiction hinges. But Winningham's argument suggests larger procedural

concerns. The concerns would indicate that the motion should be denied except

that the same concerns make disposition of the motion itself unnecessary in

the end.

     Supreme Court Rule 302 is a principal means by which this court fulfills

its constitutional supervisory role; the rule calls for direct review in

certain kinds of cases. See Ill. Const. 1970, art. VI, §16 (granting this

court supervisory authority to be exercised through the court's own rules);

see 134 Ill. 2d R. 302(a), Committee Comments, at 233 (stating that this

court "should be the forum for the decision of important questions which

affect the public interest or are otherwise of importance and general

applicability"). Jurisdiction here is based on Rule 302(a), which commands

that "[a]ppeals" from "final judgments of circuit courts shall be taken"

directly to this court "in cases in which a statute of *** this State has

been held invalid." 134 Ill. 2d R. 302(a).

     Circumstances triggering Rule 302(a) technically exist: section 14(b)

was held to be unconstitutional in a final judgement of a circuit court. Our

jurisdiction would be nonproblematic had the case involved only denial of

retroactive support solely because the section was ruled unconstitutional.

Complicating matters are the alternative, nonconstitutional reasons given for

denying the support and the aspect of the case concerning current support.

     Rule 302(a) is not expressly designed to confer interlocutory

jurisdiction. And so the intended scope of review is not really one tailored

to particular issues, as with Rule 304(a); jurisdiction under Rule 302(a)

extends to "cases." In this particular case, jurisdiction exists only because

of the part of the trial judge's order holding section 14(b) to be

unconstitutional. The jurisdiction, however, is not limited to that issue but

encompasses the entire final judgment as set out in the circuit court order.

Finding section 14(b) to be unconstitutional here was like letting the

proverbial camel's nose into the tent; that done, it is impossible to keep

out the rest of the beast. The alternative reasons for denying retroactive

support as well as the argument that the trial judge ignored a factor in

setting the amount of current support are issues that the order unavoidably

presents.

     Whether or not section 14(b) is, in fact, unconstitutional would not

dispose of all concerns. True, if the section were, as the trial judge ruled,

unconstitutional, it would be immaterial that alternative reasons existed for

denying retroactive support. Those reasons could be ignored. But the argument

concerning current support would remain. If the section turned out to be

constitutional, it might be necessary to only consider one of the two

alternative reasons for denying retroactive support to dispose of the case.

But, again, the argument respecting current support would remain. In either

situation, the nonconstitutional issues might be addressed by invoking the

interests of judicial economy.

     There are better reasons not to do so. The primary purpose of Rule

302(a) is to preserve stability in our legal system; when legislation has

been held unconstitutional, the rule provides for immediate review by the

ultimate authority in this State on the law. But courts are cautioned not to

compromise that stability in the first place by declaring legislation

unconstitutional when the particular case does not require it. See, e.g.,

People ex rel. Waller v. 1990 Ford Bronco, 158 Ill. 2d 460, 464 (1994),

citing Exchange National Bank v. Lawndale National Bank, 41 Ill. 2d 316, 321

(1968). After all, existing legislation enjoys a presumption of

constitutional validity. See People v. R.L., 158 Ill. 2d 432, 437 (1994). And

even though facially unconstitutional legislation is void when enacted (see

In re Contest of the Election for the Offices of Governor & Lieutenant

Governor, 93 Ill. 2d 463, 471 (1983)) and bad law ought not be allowed to

stand, the fact of the matter is that courts operate only in the context of

resolving lawsuits.

     Whenever a judgment of the circuit court is grounded upon finding

legislation unconstitutional, the mandate of Rule 302(a) forces the parties

to bypass the normal appellate process. When the same judgment contains

alternative grounds, or even addresses other issues, the disposition affects-

-in a largely negative way--the scheme of appellate and supreme court review.

This court, otherwise a court of permissive review, must contend with those

issues, ones the court might have elected not to address in deference to our

appellate court where the issues would have been reviewable as a matter of

right. See generally 155 Ill. 2d R. 315 (outlining various factors material

to granting leave to appeal to this court).

     In this case, it was unnecessary to find section 14(b) unconstitutional

to dispose of Trent's retroactive support claim against Winningham. And

though it is the linchpin for our jurisdiction, there is no need for us to

consider the issue either. See People ex rel. Sklodowski v. State of

Illinois, 162 Ill. 2d 117, 131 (1994), citing Stigler v. City of Chicago, 48

Ill. 2d 20 (1971). Given the concerns outlined, the answer is not simply to

vacate that portion of the judgment (see, e.g., People v. Mitchell, 155 Ill.

2d 344, 356-57 (1993)), nod to the presumption that section 14(b) is

constitutional, and proceed on to the other issues. The answer is to permit

the normal appellate process to run its course.

     That requires recognition of two things: (1) that, but for unnecessarily

declaring section 14(b) unconstitutional, there is no cause to disturb the

trial judge's disposition of the matter; and (2) that--only because under

Rule 302(a) the entire case was of necessity before this court, and we have

declined jurisdiction--time has expired for seeking, in the appellate court,

review of the non-constitutionally-based challenges to the order. See 155

Ill. 2d R. 303. Accordingly, the circuit court order must be vacated in its

entirety and reentered, as modified consistent with the concerns of this

opinion, to again start the time clock running for appeal. Invoking the power

to "grant any relief *** that the case may require" (155 Ill. 2d R. 366(a))

we remand the cause to the circuit court, directing that the order of the

circuit court entered on January 30, 1995, is to be vacated, immediately

modified to exclude the declaration that section 14(b) of the Illinois

Parentage Act of 1984 is unconstitutional, and immediately reentered.

                                                 Cause remanded with directions.

     JUSTICE McMORROW, dissenting:

     Today's decision marks a watershed in appellate review: the

unprecedented dilution of this court's willingness to review a final judgment

of the circuit court wherein an act of legislation was held unconstitutional.

In what can only be described as an unexpected and indefensible repudiation

of legal precedent, the majority has seen fit to abdicate its responsibility

of judicial review under Supreme Court Rule 302(a). Therefore, I must

respectfully dissent.

     On April 29, 1987, Barbara Trent gave birth out-of-wedlock to a son,

Alexander Winningham. Soon after the birth, Barbara informed the father of

the child, Ralph Winningham, that neither she nor Alexander required any

financial assistance. Nevertheless, approximately four years later, Barbara

instituted a paternity action on Alexander's behalf in the circuit court of

Cook County, seeking both retroactive and current child support. Barbara

based these claims on section 14(b) of the Illinois Parentage Act of 1984

(Ill. Rev. Stat. 1991, ch. 40, par. 2514, now codified at 750 ILCS 45/14(b)

(West 1992)), which provides in pertinent part:

               "(b) The court shall order all child support payments,

          determined in accordance with [the guidelines set forth in sections

          505(a) and 505.2 of the Illinois Marriage and Dissolution of

          Marriage Act (750 ILCS 5/505(a), 505.2 (West 1992))], to commence

          with the date summons is served. *** The Court may order any child

          support payments to be made for a period prior to the commencement

          of the action, including payments to reimburse any public agency

          for assistance granted on behalf of the child." 750 ILCS 45/14(b)

          (West 1992).

The Act further provides that in determining whether and to what extent such

payments are to be made for any prior period, i.e., retroactive child

support, the court shall consider all relevant facts. These include not only

the factors listed in section 505(a) of the Illinois Marriage and Dissolution

of Marriage Act, but other "equitable" factors such as:

               "(1) the father's prior knowledge of the fact and

          circumstances of the child's birth;

               (2) the father's prior willingness or refusal to help raise or

          support the child;

               (3) the extent to which the mother or the public agency

          bringing the action previously informed the father of the child's

          needs or attempted to seek or require his help in raising or

          supporting the child;

               (4) the reasons the mother or the public agency did not file

          the action earlier; and

               (5) the extent to which the father would be prejudiced by the

          delay in bringing the action." 750 ILCS 45/14(b) (West 1992).

     During the pendency of this action, the circuit court sua sponte raised

the issue of the constitutionality of retroactive child support. As a result,

the Illinois Attorney General was granted leave to intervene pursuant to

Supreme Court Rule 19 (134 Ill. 2d R. 19). The matter proceeded to trial.

     Subsequently, the circuit court denied Alexander's request for

retroactive child support on three grounds. First, the court held that the

petition for retroactive support was in essence an action brought by Barbara

for reimbursement of her own expenses rather than an action on Alexander's

behalf. Accordingly, the court found the claim untimely under section 8(a)(2)

of the Parentage Act (750 ILCS 45/8(a)(2) (West 1992)), which requires

actions on behalf of a person other than the child to be brought no later

than two years after the birth of the child.

     Second, the court ruled that, even if the request for retroactive child

support were timely, the equities lay in Ralph's favor. Applying the above-

quoted factors used in determining whether retroactive child support should

be awarded, the court found that Barbara never informed Ralph as to

Alexander's monetary needs. The court also found that Barbara never attempted

to locate Ralph despite remaining in contact with Ralph's mother throughout

the entire period.

     Finally, the circuit court declared a portion of section 14(b) violative

of the federal and state constitutional guarantees of equal protection. U.S.

Const., amend. XIV; Ill. Const. 1970, art. I, §2. The court found that

unmarried fathers were treated differently from married fathers in that unwed

fathers were potentially liable for support retroactive to the birth of the

child. 750 ILCS 45/14(b) (West 1992). Contrarily, finding no corresponding

provision in the Illinois Marriage and Dissolution of Marriage Act (see 750

ILCS 5/505(a), 505.2 (West 1992)), the court believed that fathers who were

once married could never be liable for retroactive support. As the circuit

court explained, "[the] court finds that there is no rational basis in the

statute in question or relationship between a child's right to the physical,

mental, emotional and monetary support of the child's parents that justifies

unwed fathers to be ordered to pay retroactive child support prior to the

date of the filing of the action where the state [sic] purposes of both the

Illinois Marriage and Dissolution of Marriage Act and the Illinois Parentage

Act are so similar and substantially the same, yet married fathers are not by

legislation required to do so." Accordingly, the court held section 14(b)

unconstitutional to the extent that it permitted an award of retroactive

child support.

     As to the other relief sought, the circuit court ordered Ralph to pay

current child support as mandated elsewhere in section 14(b). As previously

indicated, the first sentence of section 14(b) states in relevant part:

               "The court SHALL order all child support payments, determined

          in accordance with [the guidelines set forth in sections 505(a) and

          505.2 of the Illinois Marriage and Dissolution of Marriage Act], to

          commence with the date summons is served." (Emphasis added.) 750

          ILCS 45/14(b) (West 1992).

Section 505(a) guidelines further provide a graduated schedule used in

determining the minimum amount of child support. Where only one child is

involved, as in this case, the supporting party is required to contribute an

amount equal to 20% of his or her net income unless the court expressly finds

a reason for deviating from the statutory guidelines. Some of the listed

factors include the financial resources of the child as well as the financial

resources and needs of the custodial and noncustodial parent. 750 ILCS

5/505(a) (West 1992). In this case, the court ordered Ralph to pay an amount

less than 20% of his net income due in large part to expenses associated with

his attendance at Iowa State University. The court also noted that Barbara

had seemingly inflated her own monthly expenses. No further orders were

entered.

     Due to the fact that the circuit court held section 14(b) invalid,

Barbara and the Attorney General appealed directly to this court in

accordance with Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a) (providing

for direct appeals from final judgments in cases where a statute has been

held invalid)). The matter was fully briefed by the parties. Included for our

review was whether the circuit court erred in (i) finding the action

untimely, (ii) holding in favor of Ralph on the merits, (iii) declaring part

of section 14(b) unconstitutional, and (iv) ordering current child support in

an amount less than the statutory guidelines. 750 ILCS 5/505(a) (West 1992).

Ralph thereafter filed a motion to strike the current support issue on the

grounds that it was "never appealed by [Barbara] under Supreme Court Rule

302." Both Barbara and the Attorney General responded in writing. After

taking the motion with the case, we then proceeded to entertain full oral

argument. A motion for leave to file supplemental authority and a response

thereto were subsequently filed during the pendency of our advisement. Thus,

the only matter remaining was the issuance of our decision.

     However, without any forewarning to the parties, the majority has now

chosen instead to embark upon an unnecessarily obtuse, interpretive journey

into the otherwise plain and simple language of Rule 302(a), only to conclude

that the instant matter should be disposed of without reaching any of the

issues presented to this court. Having "technically" found that jurisdiction

exists (see slip op. at 3), the majority does a surprisingly abrupt about-

face and declines jurisdiction simply because the parties have presented more

than a single, constitutional issue for our review. As a result, the court

proceeds in the unusual course of vacating that portion of the circuit

court's order which held section 14(b) unconstitutional--a course that is

unusual in that a court ordinarily will dismiss an appeal if the court has

declined jurisdiction.

     The majority further complicates matters by remanding the now amputated

order back to the circuit court (once again after having declined

jurisdiction) for the needless task of reentering its prior order, as

modified. The majority apparently believes that in doing so it can

resuscitate--by judicial sleight-of-hand--the long since expired appeal

rights under Supreme Court Rule 303 (134 Ill. 2d R. 303). However, the

majority does not explain why it requires the parties to jump through

additional procedural hoops instead of summarily transferring the matter

directly to the appellate court under Supreme Court Rule 365 (134 Ill. 2d R.

365). A simple transfer of the case would, of course, obviate the need for

refiling the record and paying a second, unnecessary filing fee. It would

also permit a more expeditious review and resolution of the issues.

Regardless of how one reads the opinion, precious little has been

accomplished.

     The shortsightedness of the majority's machinations becomes even more

pronounced upon examination of the reasons offered by the majority in support

of its declination of jurisdiction. According to the majority,

          "Our jurisdiction would be nonproblematic had the case involved

          only denial of retroactive support solely because the section was

          ruled unconstitutional. Complicating matters are the alternative,

          nonconstitutional reasons given for denying the support and the

          aspect of the case concerning current support." Slip op. at 3.

The majority continues that "Rule 302(a) does not confer interlocutory

jurisdiction" and therefore this appeal should not be decided.

     Aside from the rather dispositive fact that this appeal does not even

involve interlocutory jurisdiction, it is somewhat surprising that the

majority is apparently prepared to overrule, sub silentio, precedent of

recent vintage. Only two months ago, this court allowed an appeal of an

interlocutory order under Supreme Court Rule 302(a), noting that "where the

order appealed from rests on a finding of a statute's unconstitutionality,

this court has assumed jurisdiction under Rule 302(a), notwithstanding the

finality requirement." Desnick v. Department of Professional Regulation, 171

Ill. 2d 510, 516 (1996), citing Garcia v. Tully, 72 Ill. 2d 1 (1978). Because

the appeal here stems from a final order of the circuit court, any reliance

by the majority upon interlocutory jurisprudence is misplaced, and further

discussion of interlocutory jurisdiction in this dissent would be

superfluous.

     Nevertheless, the majority further submits that our scope of review is

not "to be tailored to particular issues." Yet it is precisely because this

appeal has not been tailored to a particular issue, i.e., the

constitutionality of section 14(b), that the majority declines jurisdiction.

See slip op. at 3 ("Our jurisdiction would be nonproblematic had the case

involved only denial of retroactive support solely because the section was

ruled unconstitutional)." Ordinarily, this inherent contradiction between the

majority's statement that Rule 302(a) review is not to be tailored to

particular issues, and its ultimate disposition of this case on the grounds

that this appeal presents more than a single nonconstitutional issue, would

be sufficient in and of itself to refute the majority's argument, and my

dissent could end here. However, because the majority's decision, perhaps

unwittingly, has disturbing consequences for future appeals under Rule

302(a), I believe additional comment is warranted.

     The majority asserts that the existence of the nonconstitutional issue

of current child support, as well as the alternative nonconstitutional

grounds for disposing of the issue of retroactive support, "affects--in an

unnecessary and largely negative way--the scheme of appellate and supreme

court review." This argument is predicated upon the fact that this court,

which is "otherwise a court of permissive review," "must contend with those

issues, ones the court might have elected not to address." Slip op. at 4,

citing 155 Ill. 2d R. 315. As the majority states, "[f]inding section 14(b)

to be unconstitutional here was like letting the proverbial camel's nose into

the tent; that done, it is impossible to keep out the rest of the beast."

Slip op. at 3.

     Thus, because the majority apparently would not have reviewed the issue

of current child support--as well as the nonconstitutional bases for denying

retroactive support--had those issues arrived dressed in a petition for leave

to appeal under Rule 315, it elects not to decide any of the issues in this

case. It does so despite the fact that a statute has been held

unconstitutional. However, by incorporating the analysis for permissive

review under Rule 315 into the present equation, the majority has so limited

our review under Rule 302(a) that, hence forth, under the majority's

analysis, only the neatly packaged, single-issue constitutional case is ripe

for our review, absent a determination by this court that consideration of

the constitutional issue is not foreclosed by other issues in the case. As a

result, the majority has rendered the full measure of Rule 302(a) anemic.

     Unfortunately, such a narrow approach to Rule 302(a) jurisdiction not

only ignores the realities of multifaceted litigation, but it also disregards

the fact that this court has, on previous occasions, reviewed

nonconstitutional and/or collateral issues under Rule 302(a). For example, in

People ex rel. Waller v. 1990 Ford Bronco, 158 Ill. 2d 460 (1994), cited by

the majority, the circuit court of Lake County held section 1.25 of the

Wildlife Code (Ill. Rev. Stat. 1991, ch. 61, par. 1.25) unconstitutional, and

the State appealed directly to this court. During the course of the appeal,

we determined, sua sponte, that a nonconstitutional basis existed by which we

could affirm the circuit court. Contrary to today's decision, we accepted

jurisdiction in Waller, ruled on the nonconstitutional ground, declined

consideration of the constitutional issue, and affirmed the circuit court.

     Similarly, the fact that a case may present some issues for our

resolution which, standing alone, are not themselves reviewable under Rule

302(a) does not mean that the presence of those issues thwarts this court's

jurisdiction when they are part of final judgment holding a statute

unconstitutional. To the contrary, in Brown's Furniture, Inc. v. Wagner, No.

78195 (April 18, 1996), the circuit court of Sangamon County had held, inter

alia, that the Illinois Use Tax Act (35 ILCS 105/1 et seq. (West 1994)), as

applied to a certain taxpayer, contravened the commerce clause of the United

States Constitution. U.S. Const., art. I, §8. However, the circuit court's

finding that the statute was unconstitutional "as applied" was not in and of

itself appealable under Rule 302(a). See Rehg v. Illinois Department of

Revenue, 152 Ill. 2d 504, 508-09 (1992) ("[s]uch an order does not declare a

statute unconstitutional; it simply declares that application of that statute

would violate a particular defendant's constitutional rights. An appeal from

such an order is properly brought in the appellate court pursuant to Rule 301

(134 Ill. 2d R. 301)") overruled in part on other grounds, Wilson v.

Department of Revenue, 169 Ill. 2d 306 (1996). This court nevertheless

resolved the "as applied" challenge in Brown's Furniture under Rule 302(a)

because the circuit court had also held the Illinois Use Tax Act

unconstitutional on its face. That latter finding was sufficient to sustain

our jurisdiction, and nothing prohibited us from reviewing all of the issues

presented.

     Perhaps the most troubling aspect of today's decision, however, is the

fact that the majority does not define the standards by which this court will

exercise its discretion under Rule 302(a) in declining jurisdiction in future

appeals. The majority's opinion teaches us that judicial economy is not a

consideration; that notion has been summarily rejected by the majority. See

slip op. at 3 ("the nonconstitutional issues might be addressed by invoking

the interests of judicial economy. There are better reasons not to do so").

     The majority also informs us that fairness to the parties is not a

consideration. There is simply nothing fair about an eleventh hour rejection

of an appeal which sends the parties back to the circuit court for reentry of

an order, only so that they may scurry off to the appellate court to have the

issues, already briefed and argued before this court, briefed and argued

again. In fact, under the majority's remandment, the appellate court may very

well reverse the circuit court's decision on the current child support issue

as well as the nonconstitutional issues and remand the matter for further

proceedings. At that point, the circuit court might undertake the perfunctory

task of reentering its judgment holding section 14(b) unconstitutional. The

parties could then appeal again directly to this court under Rule 302(a) with

a new order that has by then been laundered of all nonconstitutional issues.

Under today's decision, only then will we review the constitutionality of

section 14(b).

     If judicial economy and fairness to the parties are not to be the

benchmark of the majority's permissive review under 302(a), then what are the

standards by which this court will exercise its ill-defined discretion in

future appeals? The majority offers no guidance to litigants as to whether

they should appeal to the appellate court or to this court in cases which

involve more than an isolated constitutional challenge. More important, the

majority fails to explain why we should frustrate our own review of a

constitutional issue simply because a circuit court has entered judgment on

all of the issues in the case.

     The absence of such an explanation only serves to highlight the circular

reasoning of the majority's logic. Rule 302(a) by its terms specifically

requires that appeals be from a "final judgment[ ]" of the circuit court. In

other words, in order for an appeal to lie in this court under Rule 302(a),

the circuit court must, by rule, enter judgment on all of the issues in the

case. And yet when the circuit court does so, it thereby precludes our review

under Rule 302(a), according to the majority's approach, precisely because it

has ruled on the other nonconstitutional issues. This cannot be so.

     Therefore, for all of the above reasons, I cannot join in the majority's

recognition and subsequent declination of jurisdiction. Instead, consistent

with prior precedent, and in the interests of judicial economy, I would have

decided this appeal and, as is the usual case, ruled first on the

nonconstitutional issues. See, e.g., People ex rel. Waller v. 1990 Ford

Bronco, 158 Ill. 2d 460 (1994). Then, only if necessary, would I have reached

the equal protection challenge to section 14(b) of the Illinois Parentage

Act. But either way, this case would have come to its deserved end rather

than be sent back to the circuit court so that it may begin a new odyssey

before the appellate court.

     I respectfully dissent.

     CHIEF JUSTICE BILANDIC joins in this dissent.