(No. 49685

PATRICIA L. GARCIA *et al.*, Appellants, v. THOMAS
TULLY, County Assessor, *et al.*, Appellees.

*Opinion filed May 26, 1978.*

CLARK and KLUCZYNSKI, JJ., took no part.

Richard Orlikoff, Robert J. Peters, and Randolph K. Blomberg, of Chicago, for appellants.

Kirkland & Ellis, of Chicago (Don H. Reuben,

4

John E. Angle, and Samuel Fifer, of counsel), for appellee.

Robert S. Atkins, of Freeman, Atkins & Coleman, Ltd., of Chicago, for *amicus curiae* Illinois Press Association.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Patricia L. Garcia, Robert Paddock, Philip Bash, The Paddock Corporation, Shepherd Publications, Inc., and Myers Publishing Co., appealed from the order of the circuit court of Cook County dissolving a preliminary injunction under which defendants, Thomas Tully, county assessor, and the president and members of the board of commissioners, and Edward J. Mulville, county purchasing agent of Cook County, and Area Publications Corporation, hereafter Area, were enjoined from contracting to publish certain personal property and real estate tax assessment lists in the Suburban Trib. In its order dissolving the preliminary injunction the circuit court found that there was no just reason to delay enforcement or appeal. (Supreme Court Rule 304(a), 58 Ill. 2d R. 304(a).) Although the order does not so state, citing to the memorandum opinion filed by the circuit court prior to the entry of its order, plaintiffs assert that the effect of the order dissolving the injunction was to hold unconstitutional section 104 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 585) and that under Rule 302(a) (58 Ill. 2d R. 302(a)) the appeal lay directly to this court.

Section 104 of the Revenue Act of 1939 provides that in counties containing 2 million or more inhabitants the county assessor shall publish the assessments of personal property, the quadrennial assessments of real property and, in years other than years of a quadrennial assessment,

à full and complete list of the assessments in which changes are made. It further provides:

"In such counties, or assessment districts therein, the publication of the assessments of personal property and real estate or the changes therein required in this Act to be published, shall be printed in some newspaper or newspapers of general circulation published in the county except that, in every township or incorporated town which has superseded a civil township, in which there is published one or more newspapers of general circulation, the assessment list of such townships shall be published in one of such newspapers and in cities of more than 2,000,000 population the assessment list of such city shall be printed in one or more newspapers of general circulation published in the township assessment district within such city or, in the event a newspaper of general circulation is not published within such township assessment district, in one or more newspapers of general circulation published within such city." Ill. Rev. Stat. 1975, ch. 120, par. 585.

It appears from the pleadings and an "agreed statement of uncontested facts" that each of the corporate plaintiffs is the publisher of a newspaper published in either Barrington, Palatine or Hanover Townships in Cook County; that each of the individual plaintiffs is a resident of and taxpayer in one of these townships and is also either an officer or employee of one of the corporate plaintiffs; that Life Printing and Publishing Co., Inc., not a party to this cause, publishes The Berwyn Life, a newspaper with an average press run of 13,500 copies, all of which are circulated in Berwyn Township; that Barrington Press, Inc., also not a party to this cause, publishes the Barrington Courier Review, circulated generally in Barrington Township; that defendant Area is a wholly owned subsidiary of the Chicago Tribune Company and is the owner and publisher of the Suburban Trib, which is published under nine names (*e.g.,* Suburban Trib-Northwest Cook County, Suburban Trib-West Cook

County, *etc.*); that approximately 343,000 copies of the Suburban Trib are circulated with the Chicago Tribune in Lake, Cook, Du Page and portions of Kane and Will Counties; that the Suburban Trib-Northwest Cook County is circulated three times each week with the Chicago Tribune in Barrington, Hanover and Palatine Townships and that approximately 53,000 copies of each issue are so circulated; that the Suburban Trib-West Cook County is published three times each week and approximately 32,000 copies of each issue are circulated in Berwyn Township, also with the Chicago Tribune; that there are approximately 30 annual subscriptions to the Suburban Trib and these subscribers receive their copies by mail; that the Suburban Trib is printed in Hinsdale or Des Plaines and copies are distributed to newspaper dealers who place copies within the Chicago Tribune to be delivered to homes during the morning hours of the day of publication; that copies of all editions of the Suburban Trib can be purchased by the public after 9 a.m. on the date of issue and thereafter, at Area's office in Hinsdale for 10 cents per copy; that except within a copy of the Chicago Tribune no copies of the Suburban Trib are delivered to any person residing in Hanover, Berwyn, Barrington or Palatine Townships; that the Finance Committee of the board of commissioners recommended to the board that the 1976 personal property tax assessment lists for the townships of Barrington, Berwyn, Hanover and Palatine, the changes made in connection with the 1976 real estate assessment lists in the nonquadrennial township of Hanover, and the 1976 real estate quadrennial assessment list for the township of Barrington be published in the Suburban Trib, upon acceptance of the bid of the defendant Area.

Prior to consideration of the substantive issues briefed and argued by the parties we consider first defendant Area's contention that this court is without jurisdiction to hear this appeal and that it should be dismissed.

Defendants argue that because the appeal is not taken from a "final judgment" of the circuit court it may not, under Rule 302(a), be taken directly to this court. Article VI, section 4, of the Constitution of 1970 provides for a direct appeal when a death sentence has been imposed and that "The Supreme Court shall provide by rule for direct appeal in other cases." This court has jurisdiction to permit a direct appeal from other than "final judgments." *Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87.

The order dissolving the preliminary injunction was an interlocutory order appealable as a matter of right (Supreme Court Rule 307, 58 Ill. 2d R. 307), and upon motion filed pursuant to Rule 302(b) (58 Ill. 2d R. 302(b)) the appeal could be taken directly to this court. What effect, if any, the addition of the finding, apparently in an attempt to comply with Rule 304(a), that there was no just reason for delaying enforcement or appeal had on the order entered by the circuit court we need not and do not decide. Although the procedural route followed is not clearly delineated, it appears from the opinion and order of the circuit court that the order dissolving the injunction rests upon the finding that section 104 of the Revenue Act of 1939 is unconstitutional. Under these circumstances, direct appeal under Rule 302(a) is appropriate, and defendants' motion to dismiss the appeal is denied.

Plaintiffs contend that in holding section 104 of the Revenue Act unconstitutional the circuit court erred; that the publication and printing of tax-assessment notices is a proper subject of regulation by the State; and that the Suburban Trib is not a newspaper qualified either to publish tax notices in Illinois or in any of the four townships here involved. Defendant Area contends that section 104, as applied to its newspapers, is unconstitutional; that the Suburban Trib is in fact nine separate newspapers, each of which is a newspaper of

general circulation within the meaning of the statute, and that two of the Suburban Tribs, the West County and Northwest County editions, are, within the meaning of the statute, published in these townships. The county defendants have appeared but have not filed a brief or taken a position on the merits of the appeal. They have filed a statement to the effect that if the order of the circuit court is affirmed the county will continue to accept bids from Area for the printing of tax-assessment lists. They ask, however, that in the event this court reverses the order of the circuit court it declare "that the validity of previously published tax assessment lists is in no way impaired, and that the taxes connected to those lists are legal."

Illinois Press Association, *amicus curiae,* arguing that "the well established statutory legal notice system is fair and reasonable and should not be destroyed" and that the section under attack is constitutional, urges reversal of the order.

For the obvious reason that unless section 104 of the Revenue Act of 1939 is constitutional the other issues are no longer material, we consider first the question of its validity. Defendant Area contends that the statute is unconstitutional on two grounds: first, that the assessment lists are speech protected by the first amendment to the United States Constitution; and second, that it must be held invalid for the reason that "in its proposed application here it does not serve a logically compelling State interest." It is the position of plaintiffs that the publication of tax-assessment notices is not speech protected by the first amendment and, assuming, *arguendo*, that such notices are a form of commercial speech, dissemination of such notices may be regulated without violating the first amendment.

Starting from the premise that a newspaper's decision to accept or reject an item of paid advertising is a decision

protected by the first amendment, Area argues that "any intrusion by the court or the legislature into that process bears the strongest presumption against its validity the law can recognize." We have examined the authority upon which this argument is based (*Miami Herald Publishing Co. v. Tornillo* (1974), 418 U.S. 241, 41 L. Ed. 2d 730, 94 S. Ct. 2831) and are unable to perceive any resemblance between the issue involved there and that presented here. Our review of the authorities cited by Area (*Bigelow v. Virginia* (1974), 421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222; *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations* (1973), 413 U.S. 376, 37 L. Ed. 2d 669, 93 S. Ct. 2553; *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817) fails to reveal any support for its argument that the provisions of section 104 in any manner impinge upon its first amendment rights. The Supreme Court has rejected the contentions that applying the Fair Labor Standards Act to a newspaper-publishing business abridged the freedom of press guaranteed by the first amendment (*Oklahoma Press Publishing Co. v. Walling* (1946), 327 U.S. 186, 192-93, 90 L. Ed. 614, 620, 66 S. Ct. 494, 497-98) and that the first amendment precluded application of the Sherman Act to a newsgathering organization (*Citizen Publishing Co. v. United States* (1969), 394 U.S. 131, 22 L. Ed. 2d 148, 89 S. Ct. 927). It is also established that a newspaper may be subjected to nondiscriminatory forms of general taxation. (*Grosjean v. American Press Co.* (1936), 297 U.S. 233, 250, 80 L. Ed. 660, 668, 56 S. Ct. 444, 449; *Murdock v. Pennsylvania* (1943), 319 U.S. 105, 112, 87 L. Ed. 1292, 1298, 63 S. Ct. 870, 874.) Section 104 in no manner limits Area's right to publish the tax lists in question—it prescribes certain qualifications which must be met in order that a newspaper, for compensation, be eligible to publish them. We have considered Area's argument that its right to

publish the tax lists is "meaningful" only when coupled with the corresponding right to be compensated therefor, and we do not agree. The guarantees contained in the first amendment prohibit the abridgement of freedom of the press which we do not construe to include the right, absent the statutorily prescribed qualifications, to publish the tax notices in question. Assuming, *arguendo,* that there is here involved a right guaranteed by the first amendment, in our opinion the provisions of section 104 fall within the permissible bounds of time, place and manner restrictions on commercial speech (*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817) and are not violative of the first amendment.

Defendant Area contends "that section 585 [104] in its proposed application does not serve a logically compelling State interest" and "that any restriction on First Amendment rights must be narrowly drawn and no greater than necessary to achieve a legitimate governmental interest." The argument presumes that section 104 purports to impose a restriction on a first amendment right, thus creating a "suspect classification" and invoking the rule that in order to sustain its validity the State bears the burden of showing that the classification was related to some compelling State purpose. We do not agree that the statute imposes any restriction on a first amendment right. The question whether section 104 is violative of the equal protection clause is to be decided on the basis of whether the classification is rationally related to a legitimate governmental objective, and the burden is on Area to prove that it is arbitrary and invalid. Whether the course chosen by the General Assembly to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry. (*Schreiber v. County of Cook* (1944), 388 Ill. 297; *Stewart v. Brady* (1921), 300 Ill. 425.) If there is a reasonable basis for the classification and

it bears a reasonable and proper relation to the purposes of the Act, the classification is not unreasonable. *Williams v. City of Chicago* (1977), 66 Ill. 2d 423; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572; *Crews v. Lundquist* (1935), 361 Ill. 193.

The obvious reason for the statutory requirement of publication in a newspaper published in the township is that the tax lists were thus most likely to be seen by the taxpayers affected. In *In re Monrovia Evening Post* (1926), 199 Cal. 263, 248 P. 1017, holding valid a statute which required that a legal notice appear only in newspapers of general circulation which were both printed and published in the State, city, or county wherein the offered advertising was published, the Supreme Court of California said: "The very purpose of requiring the publication of official notices is to inform the people concerning proceedings of a public nature for their general welfare. It appears reasonable to require such notices to be published in newspapers having a fixed and permanent domicile and a substantial circulation at the city or place where the inhabitants live who are most vitally interested in the transactions respecting which notices are required. At least, it is not unreasonable to expect the citizens of a particular community to rely upon their local newspaper primarily to inform them of the proceedings of their own local officers and the affairs of local public importance. No doubt it is on this theory that the legislature has seen fit to require such official advertising to be done only in newspapers of general circulation, both printed and published in the place where such notices are given or made." (199 Cal. 263, 269, 248 P. 1017, 1020.) We hold that section 104 of the Revenue Act is not violative of the equal protection clause of either the Constitution of the United States or the Illinois Constitution of 1970.

We consider next whether within the meaning of section 104 of the Revenue Act of 1939 the Suburban

Trib-West Cook County is published in Berwyn Township and the Suburban Trib-Northwest Cook County is published in the townships of Barrington, Palatine and Hanover. The statute provides that the assessment lists for the townships in which there is published one or more newspapers of general circulation shall be published in one of such newspapers. It is Area's position that publication occurs when the newspapers are delivered or issued to the reading public, and that because the newspapers become available simultaneously throughout the whole of the area in which they are distributed, including these four townships, the papers are published in those townships and the requirements of section 104 are satisfied. There are a great many statutes which provide for publications in newspapers, and an examination of their provisions (*e.g.,* Ill. Rev. Stat. 1977, ch. 24, par. 9—3—44; ch. 32, par. 157.84; ch. 34, par. 2713; ch. 42, par. 3—6; ch. 46, par. 4—7; ch. 77, par. 14; ch. 100, par 2; ch. 105, par. 4—4; ch. 110, par. 14) demonstrates that the General Assembly intended that a distinction be made between the "publication" of a newspaper and its "general circulation." The narrow question presented by Area's contention is whether simultaneous circulation is the statutory equivalent of publication.

In *Polzin v. Rand, McNally & Co.* (1911), 250 Ill. 561, the court held invalid section 6 of the textbook act of 1909 (Hurd's Rev. Stat. 1909, ch. 122, par. 519), which in pertinent part provided that prior to adopting school textbooks for use in their respective districts boards of education were required to advertise for bids "in one or more newspapers of general circulation published in the city or district." A stipulation of facts showed that there were no newspapers published in 11,198 of the 11,820 school districts in the State. The court rejected the contention that the statute should be construed to hold that "circulated" in the district complied with the

requirement that the newspaper be published in the district. The court went on to say: "We apprehend no one would contend that it was intended to authorize advertisement in a newspaper circulated, but not published, in a district in which there was a newspaper of general circulation published. Yet if the act is construed as appellant contends for, we see no reason why the advertisement could not be published in any newspaper published outside the district but of general circulation in the district, although there might be one or more newspapers published in the district. A newspaper is of general circulation when it circulates among all classes and is not confined to a particular class or calling in the community. (*Railton v. Lauder*, 126 Ill. 219.) Chicago and St. Louis papers have a general circulation in many cities and school districts throughout this State and papers published in other cities and States circulate in Chicago, but the legislature could not have intended that boards of education of Springfield or Cairo could advertise for bids in Chicago or St. Louis newspapers. The language of section 6 is too plain and explicit to admit of the construction contended for by appellant. If it had been intended that publication in a newspaper of 'general circulation' in the district should be a compliance with the law, the legislature would not have required that the publication be made not only in a newspaper of general circulation in the district, but also in a newspaper 'published' in the district. By the word 'published' is clearly meant the place where the newspaper is first issued or printed, to be sent out by mail or otherwise." 250 Ill. 561, 574-75.

In *People ex rel. O'Connell v. Read* (1912), 256 Ill. 408, an appropriation ordinance for the village of Morgan Park had been published in a newspaper called The Post. The statute then in force and effect provided that appropriation ordinances were to be published within one

month after enactment in a newspaper "published in the city or village" (256 Ill. 408, 410) and if no such newspaper was published, by the posting of notices in public places. The record showed that The Post was published weekly "in the interest of Morgan Park, Blue Island, and the entire country along the Blue Island ridge, in Chicago, by the Post Co." (256 Ill. 408, 410.) The court held that there had been no compliance with the statute because the paper was not published within the village.

In support of its position Area cites an opinion of the Attorney General (1958 Ill. Att'y Gen. Rep. 227) interpreting the provisions of section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1957, ch. 120, par. 584). Editions of the Southern Illinoisan, printed in Carbondale in Jackson County, were released for general circulation in that city at the same time that they were prepared for delivery to Herrin in Williamson County and Murphysboro in Jackson County. The Attorney General expressed the opinion that the Southern Illinoisan was equally "published" in all three cities and was therefore eligible to publish the assessment lists for Williamson County. We need not and do not decide the correctness of the opinion of the Attorney General, which is based upon a factual situation clearly distinguishable from that presented here. The address at which Area maintains its principal place of business is in Hinsdale in Du Page County and apparently after 9 a.m. on publication days that is the only place where copies of the Suburban Trib may be purchased. In view of what we find to be the clearly drawn statutory distinction between a newspaper's being "published" and "circulated," we hold that simultaneous circulation of Area's newspapers in the townships involved does not serve to make them newspapers published within the township within the contemplation of section 104.

In view of our conclusion we do not reach the questions whether within the meaning of section 104 of

the Revenue Act of 1939, the Suburban Trib-West Cook County is a newspaper of general circulation in Berwyn Township, and the Suburban Trib-Northwest Cook County is a newspaper of general circulation in the townships of Barrington, Palatine and Hanover.

This record contains a comprehensive agreed statement of facts, and it does not appear that any useful purpose would be served by remanding this cause for further hearing. (*Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87.) The preliminary injunction dissolved by the order from which plaintiffs appealed enjoined only the publication in the Suburban Trib of the 1976 tax-assessment lists for the townships of Hanover, Palatine, Berwyn or Barrington. Since the statutory period during which such lists could be published has long since passed, the reversal of the order and issuance of an injunction at this time would be meaningless. Concerning future publications of the tax lists here sought to be enjoined, it cannot be determined from the agreed statement of facts that the factual situation has continued without change subsequent to the time involved in this proceeding. Under the circumstances the order dissolving the injunction is vacated and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

We have considered and now deny the request of the county defendants that in the event we reverse the order of the circuit court we hold "that the validity of previously published tax assessment lists is in no way impaired, and that the taxes connected to those lists are legal." The question of the validity of the taxes is not now before us for decision.

*Order vacated; cause remanded.*

CLARK and KLUCZYNSKI, JJ., took no part in the consideration or decision of this case.