634 N.E.2d 733 (1994)
158 Ill.2d 432
199 Ill.Dec. 680
The PEOPLE of the State of Illinois, Appellant,
v.
R.L., a Minor, Appellee.
The PEOPLE of the State of Illinois, Appellant,
v.
D.W., a Minor, Appellee.
Nos. 75081, 75082 and 75083.
Supreme Court of Illinois.
March 24, 1994.
Certiorari Denied October 3, 1994.
*735 Roland W. Burris, Atty. Gen., Springfield, and Jack O'Malley, State's Atty., Chicago (Terence M. Madsen, Asst. Atty. Gen., Chicago, and Renee G. Goldfarb, and Donald J. Mizerk, Asst. State's Attys., of counsel), for the People.
Kimball R. Anderson and Marie A. Lona, Winston & Strawn, Michael O'Rourke, O'Rourke & Griffin, and Maria Woltjen, and Karen Berman, all of Chicago, for appellees.
F. Willis Caruso, Chicago, amicus curiae for Chicago Housing Authority.
Dallas Ingemunson and Elizabeth C. Clarke, Chicago, amicus curiae for Ill. Juvenile Justice Commission et al.
Tom Leahy, Dennis A. Rendleman and Mary T. McDermott, Springfield (Harold C. Hirshman and David E. Lieberman, of Sonnenschein, Nath & Rosenthal, Chicago, of counsel), for amicus curiae Ill. State Bar Association.
See 115 S.Ct. 296.
Justice FREEMAN delivered the opinion of the court:
Section 5-4(7)(a) of the Juvenile Court Act of 1987 provides, under various circumstances, for the automatic transfer of cases of 15- and 16-year-old minors charged with drug offenses from the juvenile division of a circuit court to that court's criminal division. (Ill.Rev.Stat.1991, ch. 37, par. 805-4(7)(a).) The question presented for review is whether this section, as applied to such minors charged with committing drug offenses on or near public housing property, denies such minors the equal protection of the laws. We hold that it does not.

BACKGROUND
On April 6, 1992, defendant D.W. was 16 years old. On that date, he was arrested and subsequently charged with delivering less than one gram of cocaine, which is a Class 2 felony. (Ill.Rev.Stat.1991, ch. 56½, par. 1401(d).) He was also charged with performing this act on a public way within 1,000 feet of Chicago Housing Authority property. This charge enhanced the penalty to a Class 1 felony (Ill.Rev.Stat.1991, ch. 56½, par. 1407(b)(2)) and made the penalty nonprobationable (Ill.Rev.Stat.1991, ch. 38, par. 1005-5-3(c)(2)(D)).
On December 22, 1991, defendant R.L. was 16 years old. On that date, he was arrested and subsequently charged with, inter alia, possessing 15.6 grams of cocaine with the intent to deliver, which is, by itself, a Class X felony (Ill.Rev.Stat.1991, ch. 56½, par. 1401(a)(2)(A)) and nonprobationable (Ill.Rev. Stat.1991, ch. 38, par. 1005-5-3(c)(2)(C)). He was charged with performing this act on Chicago Housing Authority property.
Since D.W. and R.L. were under 17 years of age at the time of these alleged offenses, they normally could not be prosecuted in the criminal division of a circuit court. However, section 5-4 of the Juvenile Court Act of 1987, sometimes referred to as the juvenile transfer statute, provides exceptions to this rule. Ill.Rev.Stat.1991, ch. 37, par. 805-4(1).
One such exception in the juvenile transfer statute provides, in pertinent part, that juvenile court administration does not extend to a minor who was at least 15 years old at the time of the alleged offense, and who was charged with violating section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat.1991, ch. 56½, par. 1401) while on residential property owned, operated, and managed by a public housing agency, or on a public way within 1,000 feet of such property. "These charges and all other charges arising out of the same incident shall be prosecuted under the Illinois Controlled Substances Act." Ill.Rev.Stat.1991, ch. 37, par. 805-4(7)(a).
Based on this provision, D.W. and R.L. were each arraigned in the criminal division of the circuit court of Cook County. Each defendant asked the trial court to dismiss the charge against him and declare both section 407 of the Illinois Controlled Substances Act and section 5-4(7)(a) of the Juvenile Court Act of 1987 unconstitutional.
The trial court ruled that section 5-4(7)(a), as applied to 15- and 16-year-old minors charged with drug offenses committed within 1,000 feet of public housing, denied such minors the equal protection of the laws. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.
*736 The State appeals directly to this court. (134 Ill.2d R. 603.) We reverse.

DISCUSSION
This court has repeatedly noted the presumption that all statutes are constitutional. The party challenging a statute has the burden of clearly establishing the alleged constitutional violations. A court must construe a statute so as to uphold the statute's constitutionality and validity if reasonably possible. If the statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity. People v. Shephard (1992), 152 Ill.2d 489, 499, 178 Ill.Dec. 724, 605 N.E.2d 518.
Under both the Federal and Illinois Constitutions, the guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. Equal protection prohibits the State from according unequal treatment to persons placed by a statute into different classes for reasons wholly unrelated to the purpose of the legislation. (Shephard, 152 Ill.2d at 499, 178 Ill.Dec. 724, 605 N.E.2d 518.) However, equal protection does not preclude different treatment for like persons where there is a rational basis for so doing. People v. P.H. (1991), 145 Ill.2d 209, 231, 164 Ill.Dec. 137, 582 N.E.2d 700; Jenkins v. Wu (1984), 102 Ill.2d 468, 477, 82 Ill.Dec. 382, 468 N.E.2d 1162.
In the present case, section 5-4(7)(a) contains a classification based on the location of the crime. A minor charged with committing a drug offense on a public way beyond 1,000 feet of public housing remains in the administration of the juvenile division of a circuit court. However, a minor charged with committing the same offense on a public way within 1,000 feet of public housing is automatically removed from a circuit court's juvenile division and is treated as an adult. Ill. Rev.Stat.1991, ch. 37, par. 805-4(7)(a).

Strict Scrutiny
This court uses two standards of judicial review in assessing an equal protection challenge: strict scrutiny and rational basis review. This court applies strict scrutiny to certain "suspect" classifications, such as race, and to classifications that impinge on fundamental constitutional rights. A law will not survive strict scrutiny unless it is necessary to promote, and is narrowly tailored to serve, a compelling State interest. Shephard, 152 Ill.2d at 500,178 Ill.Dec. 724, 605 N.E.2d 518.
In the present case, the trial court subjected section 5-4(7)(a) of the Juvenile Court Act of 1987 to strict scrutiny. The trial court noted that the statutory classification, on its face, does not involve a suspect classification. However, the parties stipulated that approximately 90% of Chicago Housing Authority residents are black and less than 2% are white. The parties also stipulated that 34 transfers under section 5-4(7)(a) occurred in the circuit court of Cook County during a one-year period from August 1991 through July 1992, and that all of these minors were nonwhite.
Based on these stipulated facts, the trial court concluded that section 5-4(7)(a) has such a disparate impact on nonwhite minors as to create a de facto suspect classification. Based on this conclusion and, we note, without a finding of whether section 5-4(7)(a) is necessary to promote and is narrowly tailored to serve a compelling State interest, the trial court ruled that the provision violated the equal protection clauses of the Federal and Illinois Constitutions.
We initially note that the State and supporting amicus, the Chicago Housing Authority, assign error to the trial court's finding that the vast majority of public housing residents are people of color. Before this court, the State and the Chicago Housing Authority included in their briefs information that purports to show that public housing residents, statewide, are not all nonwhite. Defendants object and move to strike the information and references thereto from the State's and the Chicago Housing Authority's briefs.
We grant the motion to strike because we need not consider the information. Even if section 5-4(7)(a) has a racially disparate impact, we conclude that defendants have failed to prove that the legislature purposely intended to racially criminate in enacting the provision.
*737 It is true that the racially disparate impact of a law or policy is alone sufficient to state a claim under civil rights laws such as title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq. (1988)) or the Illinois Human Rights Act (Ill.Rev.Stat.1991, ch. 68, par. 1-101 et seq.). (See Board of Trustees of Southern Illinois University v. Knight (1987), 163 Ill.App.3d 289, 294, 114 Ill.Dec. 836, 516 N.E.2d 991; Burnham City Hospital v. Human Rights Comm'n (1984), 126 Ill.App.3d 999, 1002, 1008, 81 Ill.Dec. 764, 467 N.E.2d 635.) However, "[t]his is not the constitutional rule." (Washington v. Davis (1976), 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597, 607.) Rather, disparate impact alone is not enough to state a claim under the equal protection clause. American Nurses' Association v. State of Illinois (7th Cir.1986), 783 F.2d 716, 722.
The United States Supreme Court has "made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. * * * Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." (Village of Arlington Heights v. Metropolitan Housing Development Corp. (1977), 429 U.S. 252, 264-65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450, 464; accord Personnel Administrator v. Feeney (1979), 442 U.S. 256, 272, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870, 883.) The absence of proof of discriminatory intent forecloses any claim that the challenged official action violates the equal protection clause. (City of Memphis v. Greene (1981), 451 U.S. 100, 119, 101 S.Ct. 1584, 1596, 67 L.Ed.2d 769, 785.) This court has followed this principle. People v. Wegielnik (1992), 152 Ill.2d 418, 429, 178 Ill.Dec. 693, 605 N.E.2d 487; People v. Adams (1992), 149 Ill.2d 331, 352, 173 Ill.Dec. 600, 597 N.E.2d 574; accord Tucker v. United States Department of Commerce (7th Cir.1992), 958 F.2d 1411, 1413-14.
Defendants and a supporting amicus, the Illinois State Bar Association, contend that the legislature at least partly intended to racially discriminate in enacting section 5-4(7)(a) of the Juvenile Court Act of 1987. Defendants point to the stipulated facts that the vast majority of Chicago Housing Authority residents are people of color, and that every single transfer under section 5-4(7)(a) during a one-year period has been that of a nonwhite minor. Defendants argue that this racially disproportionate impact is proof of discriminatory intent.
We disagree. It is true that a discriminatory purpose can be inferred from the totality of the relevant facts, including a racially disproportionate impact. (Washington, 426 U.S. at 242, 96 S.Ct. at 2048-49, 48 L.Ed.2d at 608-09.) Sometimes a clear pattern, unexplainable on nonracial grounds, emerges from the effect of a statute, even when the law is facially neutral. However, "such cases are rare." Arlington Heights, 429 U.S. at 266, 97 S.Ct. at 564, 50 L.Ed.2d at 465.
A facially neutral and otherwise valid law does not violate the equal protection clause simply because the law may affect a greater proportion of one race than of another. Disproportionate impact is relevant, but it is not the sole determinative of unconstitutional racial discrimination. Disproportionate impact alone does not trigger strict scrutiny. Washington, 426 U.S. at 242, 96 S.Ct. at 2049, 48 L.Ed.2d at 609.
Defendants also contend that the foreseeability of this racially disparate impact is additional proof that the legislature intended to racially discriminate in enacting section 5-4(7)(a). Defendants posit that the legislature was "fully aware of the racial composition of public housing." Defendants further point to speeches by several legislators during the debates on this provision. These statements purportedly notified the legislature of the rationally disparate impact of the provision. Defendants further note that subsequent speakers during the debates ignored these concerns. Defendants conclude that the legislature's failure to address these concerns "shows the foreseeability of the impact and discriminatory intent in the enactment of [section 5-4(7)(a)]."
We cannot accept this reasoning. Defendants cite, inter alia, Feeney, 442 U.S. at 279 nn. 24 & 25, 99 S.Ct. at 2296 nn. 24 & 25, 60 L.Ed.2d at 887, 888 nn. 24 & 25, for the proposition that inevitable adverse consequences support a strong inference of intent. *738 However, this passage is immediately followed by a caveat:
"But in this inquirymade as it is under the Constitutionan inference is a working tool, not a synonym for proof. When, as here, the impact is essentially an unavoidable consequence of a legislative policy that has in itself always been deemed to be legitimate, and when, as here, the statutory history and all of the available evidence affirmatively demonstrate the opposite, the inference simply fails to ripen into proof." Feeney, 442 U.S. at 279 n. 25, 99 S.Ct. at 2296 n. 25, 60 L.Ed.2d at 888 n. 25.
Feeney actually opposes defendants' position. The rule in Feeney is that "[e]ven conscious awareness on the part of the legislature that the law will have a racially disparate impact does not invalidate an otherwise valid law, so long as that awareness played no causal role in the passage of the statute." United States v. Frazier (3d Cir.1992), 981 F.2d 92, 95, citing Feeney, 442 U.S. at 279, 99 S.Ct. at 2296, 60 L.Ed.2d at 887-88.
It is true that legislative debates on a statute are a proper source in determining whether a legislature had a racially discriminatory intent in enacting the law. (Arlington Heights, 429 U.S. at 268, 97 S.Ct. at 565, 50 L.Ed.2d at 466.) However:
"Statements made by members of the General Assembly in legislative debate assist in revealing the legislative intent behind a statute only when examined in the context of the debate in its entirety. `Legislative intent' speaks to the will of the legislature as a collective body, rather than the will of individual legislators." Morel v. Coronet Insurance Co. (1987), 117 Ill.2d 18, 24, 109 Ill.Dec. 157, 509 N.E.2d 996.
Thus, courts generally give statements by individual legislators in a floor debate little weight when searching for the intent of the entire legislative body. (Castaneda-Gonzalez v. Immigration & Naturalization Service (D.C. Cir. 1977), 564 F.2d 417, 424; accord Butts v. City of New York Department of Housing Preservation & Development (2d Cir.1993), 990 F.2d 1397, 1405.) Such statements by themselves do not affirmatively establish the intent of the legislature. (See Craddock v. Board of Education of Annawan Community Unit School District No. 226 (1979), 76 Ill.App.3d 43, 52, 29 Ill.Dec. 376, 391 N.E.2d 1059.) In the present case, we will not ascribe the views of a few legislators to the entire legislature.
We further conclude, for reasons which we will discuss later, that section 5-4(7)(a) is reasonable. After carefully reviewing the trial record, we conclude that if any inference of racial discrimination existed, it failed to ripen into proof. See Price v. Austin Independent School District (5th Cir.1991), 945 F.2d 1307, 1319.
Therefore, the trial court erred by ruling that the provision created a de facto suspect classification. "A law that does not implicate either a suspect classification or a fundamental right is subject to rational basis review." (Shephard, 152 Ill.2d at 500, 178 Ill.Dec. 724, 605 N.E.2d 518; accord Frazier, 981 F.2d at 95.) Accordingly, we will subject section 5-4(7)(a) to rational basis review.

Rational Basis
Defendants note that crime exists statewide and not only in public housing. Thus, defendants contend, no rational basis exists for treating 15- and 16-year-old minors who are charged with committing drug offenses near public housing differently than those who are charged with committing those offenses away from public housing.
Under the rational basis test, a statutory classification need only be rationally related to a legitimate State goal. A statute must have only a rational basis for distinguishing the class to which the law applies from the class to which the law does not apply. Under this test, a court's review of a legislative classification is limited and generally deferential. The legislature, under the State's police power, has wide discretion to classify offenses and prescribe penalties for those offenses. Thus, if any set of facts can reasonably be conceived to justify the statute, it must be upheld. Shephard, 152 Ill.2d at 500, 502,178 Ill.Dec. 724, 605 N.E.2d 518.
Further, the State may direct a law against what it considers to be a problem as it actually exists. The statute need not cover *739 the whole field of possible abuse. The legislature may enact a law that addresses the area of concern that seems most acute. Shephard, 152 Ill.2d at 502, 178 Ill.Dec. 724, 605 N.E.2d 518.
We conclude that a rational basis exists for the classification created by section 5-4(7)(a) of the Juvenile Court Act of 1987. The classification at issue here is based on the location of the charged offense. This is a permissible distinction. (Shephard 152 Ill.2d at 503, 178 Ill.Dec. 724, 605 N.E.2d 518.) What this court stated in Shephard concerning adults applies equally to 15- and 16-year-old minors:
"[T]he purpose of the law was simply to deter narcotics activity in public housing, an area where the impact of this evil has been severe. Further, providing a more severe penalty for such conduct is a reasonable means of accomplishing such deterrence." (Shephard 152 Ill.2d at 503, 178 Ill.Dec. 724, 605 N.E.2d 518.)
Prosecuting 15- and 16-year-old minors as adults is also a reasonable means of accomplishing such deterrence. P.H., 145 Ill.2d at 231-32, 164 Ill.Dec. 137, 582 N.E.2d 700.
"Whether a statute is wise or unwise, and whether it is the best means to achieve the desired results, are among the matters for the legislature and not the courts." (Shephard 152 Ill.2d at 503, 178 Ill.Dec. 724, 605 N.E.2d 518.) As the Court noted in Feeney:
"Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." Feeney, 442 U.S. at 271-72, 99 S.Ct. at 2292, 60 L.Ed.2d at 883.
Accord P.H., 145 Ill.2d at 232, 164 Ill.Dec. 137, 582 N.E.2d 700.
We hold that section 5-4(7)(a) of the Juvenile Court Act of 1987 does not deny 15- and 16-year-old minors, charged with drug offenses committed on or near public housing, the equal protection of the laws.
For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause remanded for further proceedings.
Reversed and remanded.