(Nos. 78726, 78730 cons.—

BARBARA TRENT *et al.*, Appellants, v. RALPH SAMUEL WINNINGHAM, Appellee.

*Opinion filed June 20, 1996.*

McMORROW, J., joined by BILANDIC, C.J., dissenting.

Jack O'Malley, State's Attorney, of Chicago (Sharon Johnson Coleman, Robert F. Lyons and Leonard N. Fos-

ter, Assistant State's Attorneys, of counsel), for appellant.

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker, Assistant Public Defender, of counsel), for appellee.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of Chicago, of counsel), intervenor-appellant.

JUSTICE FREEMAN delivered the opinion of the court:

This appeal is from a circuit court order containing a judgment which, in part, declared a provision of the Illinois Parentage Act of 1984 unconstitutional. See 134 Ill. 2d R. 302(a). We remand the cause with directions.

## BACKGROUND

In 1991 Barbara Trent filed a paternity suit against Ralph Winningham. Trent alleged, and Winningham later conceded, that he fathered a son born to Trent four years earlier. Part of the relief that Trent sought was retroactive child support under section 14(b) of the Parentage Act (750 ILCS 45/14(b) (West 1992)).

The trial judge denied retroactive support for three reasons: Trent was not entitled to it; Trent's claim was time-barred; and section 14(b) was unconstitutional anyway because it violated federal and state equal protection guaranties. The trial judge himself had suggested to the parties that the section might be unconstitutional and asked them to brief the issue. His reasoning: the section caused unwed fathers to be treated differently from divorced fathers who, under the Illinois Marriage and Dissolution of Marriage Act, did not have to pay similar support.

The other grounds for the denial of support did not turn on finding the section unconstitutional. Denial of Trent's claim on the merits actually followed consideration of factors directed by section 14(b). As for being time-barred, the trial judge characterized Trent's claim as one for her own reimbursement of child-rearing expenses, a claim which the Parentage Act required to have been made within two years of her son's birth. 750 ILCS 45/8 (West 1992).

The Cook County State's Attorney, who had argued on Trent's behalf for the constitutionality of section 14(b), appealed. So did the Illinois Attorney General who had intervened (see 134 Ill. 2d R. 19) to represent the State's interest in upholding the section. Both asserted that a direct appeal lay to this court because section 14(b) had been held unconstitutional. See 134 Ill. 2d R. 302.

The State's Attorney's opening brief argues not only that the trial judge was wrong to find the section unconstitutional but also that retroactive relief should not have been denied for either alternative reason given. The brief also challenges a different aspect of the trial judge's order. Retroactive child support was only part of the relief Trent had sought. The order also contains a current support award. The State's Attorney argues that the level of current support was set too low because the trial judge failed to consider the child's best interests.

Winningham has moved to strike that part of the State's Attorney's brief. We decided to dispose of the motion in the course of this appeal.

## ANALYSIS

Winningham is right to argue that whether the trial judge ignored some factor in awarding current support has nothing to do with Trent's retroactive support claim. And it is the claim for retroactive support that spurred consideration of section 14(b)'s constitutional validity

upon which our jurisdiction hinges. But Winningham's argument suggests larger procedural concerns. The concerns would indicate that the motion should be denied except that the same concerns make disposition of the motion itself unnecessary in the end.

Supreme Court Rule 302 is a principal means by which this court fulfills its constitutional supervisory role; the rule calls for direct review in certain kinds of cases. See Ill. Const. 1970, art. VI, § 16 (granting this court supervisory authority to be exercised through the court's own rules); see 134 Ill. 2d R. 302(a), Committee Comments, at 233 (stating that this court "should be the forum for the decision of important questions which affect the public interest or are otherwise of importance and general applicability"). Jurisdiction here is based on Rule 302(a), which commands that "[a]ppeals" from "final judgments of circuit courts shall be taken" directly to this court "in cases in which a statute of *** this State has been held invalid." 134 Ill. 2d R. 302(a).

Circumstances triggering Rule 302(a) technically exist: section 14(b) was held to be unconstitutional in a final judgment of a circuit court. Our jurisdiction would be nonproblematic had the case involved only denial of retroactive support solely because the section was ruled unconstitutional. Complicating matters are the alternative, nonconstitutional reasons given for denying the support and the aspect of the case concerning current support.

Rule 302(a) is not expressly designed to confer interlocutory jurisdiction. And so the intended scope of review is not really one tailored to particular issues, as with Rule 304(a); jurisdiction under Rule 302(a) extends to "cases." In this particular case, jurisdiction exists only because of the part of the trial judge's order holding section 14(b) to be unconstitutional. The jurisdiction, however, is not limited to that issue but encompasses

the entire final judgment as set out in the circuit court order. Finding section 14(b) to be unconstitutional here was like letting the proverbial camel's nose into the tent; that done, it is impossible to keep out the rest of the beast. The alternative reasons for denying retroactive support as well as the argument that the trial judge ignored a factor in setting the amount of current support are issues that the order unavoidably presents.

Whether or not section 14(b) is, in fact, unconstitutional would not dispose of all concerns. True, if the section were, as the trial judge ruled, unconstitutional, it would be immaterial that alternative reasons existed for denying retroactive support. Those reasons could be ignored. But the argument concerning current support would remain. If the section turned out to be constitutional, it might be necessary to consider only one of the two alternative reasons for denying retroactive support to dispose of the case. But, again, the argument respecting current support would remain. In either situation, the nonconstitutional issues might be addressed by invoking the interests of judicial economy.

There are better reasons not to do so. The primary purpose of Rule 302(a) is to preserve stability in our legal system; when legislation has been held unconstitutional, the rule provides for immediate review by the ultimate authority in this state on the law. But courts are cautioned not to compromise that stability in the first place by declaring legislation unconstitutional when the particular case does not require it. See, *e.g.*, *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460, 464 (1994), citing *Exchange National Bank v. Lawndale National Bank*, 41 Ill. 2d 316, 321 (1968). After all, existing legislation enjoys a presumption of constitutional validity. See *People v. R.L.*, 158 Ill. 2d 432, 437 (1994). And even though facially unconstitutional legislation is void when enacted (see *In re Contest of the*

*Election for the Offices of Governor & Lieutenant Governor,* 93 Ill. 2d 463, 471 (1983)) and bad law ought not be allowed to stand, the fact of the matter is that courts operate only in the context of resolving lawsuits.

Whenever a judgment of the circuit court is grounded upon finding legislation unconstitutional, the mandate of Rule 302(a) forces the parties to bypass the normal appellate process. When the same judgment contains alternative grounds, or even addresses other issues, the disposition affects—in a largely negative way— the scheme of appellate and supreme court review. This court, otherwise a court of permissive review, must contend with those issues, ones the court might have elected not to address in deference to our appellate court where the issues would have been reviewable as a matter of right. See generally 155 Ill. 2d R. 315 (outlining various factors material to granting leave to appeal to this court).

In this case, it was unnecessary to find section 14(b) unconstitutional to dispose of Trent's retroactive support claim against Winningham. And though it is the linchpin for our jurisdiction, there is no need for us to consider the issue either. See *People ex rel. Sklodowski v. State of Illinois,* 162 Ill. 2d 117, 131 (1994), citing *Stigler v. City of Chicago,* 48 Ill. 2d 20 (1971). Given the concerns outlined, the answer is not simply to vacate that portion of the judgment (see, *e.g., People v. Mitchell,* 155 Ill. 2d 344, 356-57 (1993)), nod to the presumption that section 14(b) is constitutional, and proceed on to the other issues. The answer is to permit the normal appellate process to run its course.

That requires recognition of two things: (1) that, but for unnecessarily declaring section 14(b) unconstitutional, there is no cause to disturb the trial judge's disposition of the matter; and (2) that—only because under Rule 302(a) the entire case was of necessity before this

court, and we have declined jurisdiction—time has expired for seeking, in the appellate court, review of the non-constitutionally-based challenges to the order. See 155 Ill. 2d R. 303. Accordingly, the circuit court order must be vacated in its entirety and reentered, as modified consistent with the concerns of this opinion, to again start the time clock running for appeal. Invoking the power to "grant any relief *** that the case may require" (155 Ill. 2d R. 366(a)) we remand the cause to the circuit court, directing that the order of the circuit court entered on January 30, 1995, is to be vacated, immediately modified to exclude the declaration that section 14(b) of the Illinois Parentage Act of 1984 is unconstitutional, and immediately reentered.

*Cause remanded with directions.*

JUSTICE McMORROW, dissenting:

Today's decision marks a watershed in appellate review: the unprecedented dilution of this court's willingness to review a final judgment of the circuit court wherein an act of legislation was held unconstitutional. In what can only be described as an unexpected and indefensible repudiation of legal precedent, the majority has seen fit to abdicate its responsibility of judicial review under Supreme Court Rule 302(a). Therefore, I must respectfully dissent.

On April 29, 1987, Barbara Trent gave birth out of wedlock to a son, Alexander Winningham. Soon after the birth, Barbara informed the father of the child, Ralph Winningham, that neither she nor Alexander required any financial assistance. Nevertheless, approximately four years later, Barbara instituted a paternity action on Alexander's behalf in the circuit court of Cook County, seeking both retroactive and current child support. Barbara based these claims on section 14(b) of the Illinois Parentage Act of 1984 (Ill. Rev.

Stat. 1991, ch. 40, par. 2514, now codified at 750 ILCS 45/14(b) (West 1992)), which provides in pertinent part:

"(b) The court shall order all child support payments, determined in accordance with [the guidelines set forth in sections 505(a) and 505.2 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a), 505.2 (West 1992))], to commence with the date summons is served. *** The Court may order any child support payments to be made for a period prior to the commencement of the action, including payments to reimburse any public agency for assistance granted on behalf of the child." 750 ILCS 45/14(b) (West 1992).

The Act further provides that in determining whether and to what extent such payments are to be made for any prior period, *i.e.*, retroactive child support, the court shall consider all relevant facts. These include not only the factors listed in section 505(a) of the Illinois Marriage and Dissolution of Marriage Act, but other "equitable" factors such as:

"(1) the father's prior knowledge of the fact and circumstances of the child's birth;

(2) the father's prior willingness or refusal to help raise or support the child;

(3) the extent to which the mother or the public agency bringing the action previously informed the father of the child's needs or attempted to seek or require his help in raising or supporting the child;

(4) the reasons the mother or the public agency did not file the action earlier; and

(5) the extent to which the father would be prejudiced by the delay in bringing the action." 750 ILCS 45/14(b) (West 1992).

During the pendency of this action, the circuit court *sua sponte* raised the issue of the constitutionality of retroactive child support. As a result, the Illinois Attorney General was granted leave to intervene pursuant to Supreme Court Rule 19 (134 Ill. 2d R. 19). The matter proceeded to trial.

Subsequently, the circuit court denied Alexander's

request for retroactive child support on three grounds. First, the court held that the petition for retroactive support was in essence an action brought by Barbara for reimbursement of her own expenses rather than an action on Alexander's behalf. Accordingly, the court found the claim untimely under section 8(a)(2) of the Parentage Act (750 ILCS 45/8(a)(2) (West 1992)), which requires actions on behalf of a person other than the child to be brought no later than two years after the birth of the child.

Second, the court ruled that, even if the request for retroactive child support were timely, the equities lay in Ralph's favor. Applying the above-quoted factors used in determining whether retroactive child support should be awarded, the court found that Barbara never informed Ralph as to Alexander's monetary needs. The court also found that Barbara never attempted to locate Ralph despite remaining in contact with Ralph's mother throughout the entire period.

Finally, the circuit court declared a portion of section 14(b) violative of the federal and state constitutional guarantees of equal protection. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The court found that unmarried fathers were treated differently from married fathers in that unwed fathers were potentially liable for support retroactive to the birth of the child. 750 ILCS 45/14(b) (West 1992). Contrarily, finding no corresponding provision in the Illinois Marriage and Dissolution of Marriage Act (see 750 ILCS 5/505(a), 505.2 (West 1992)), the court believed that fathers who were once married could never be liable for retroactive support. As the circuit court explained, "[the] court finds that there is no rational basis in the statute in question or relationship between a child's right to the physical, mental, emotional and monetary support of the child's parents that justifies unwed fathers to be ordered to pay retroac-

tive child support prior to the date of the filing of the action where the state [*sic*] purposes of both the Illinois Marriage and Dissolution of Marriage Act and the Illinois Parentage Act are so similar and substantially the same, yet married fathers are not by legislation required to do so." Accordingly, the court held section 14(b) unconstitutional to the extent that it permitted an award of retroactive child support.

As to the other relief sought, the circuit court ordered Ralph to pay current child support as mandated elsewhere in section 14(b). As previously indicated, the first sentence of section 14(b) states in relevant part:

> "The court *shall* order all child support payments, determined in accordance with [the guidelines set forth in sections 505(a) and 505.2 of the Illinois Marriage and Dissolution of Marriage Act], to commence with the date summons is served." (Emphasis added.) 750 ILCS 45/14(b) (West 1992).

Section 505(a) guidelines further provide a graduated schedule used in determining the minimum amount of child support. Where only one child is involved, as in this case, the supporting party is required to contribute an amount equal to 20% of his or her net income unless the court expressly finds a reason for deviating from the statutory guidelines. Some of the listed factors include the financial resources of the child as well as the financial resources and needs of the custodial and noncustodial parent. 750 ILCS 5/505(a) (West 1992). In this case, the court ordered Ralph to pay an amount less than 20% of his net income due in large part to expenses associated with his attendance at Iowa State University. The court also noted that Barbara had seemingly inflated her own monthly expenses. No further orders were entered.

Due to the fact that the circuit court held section 14(b) invalid, Barbara and the Attorney General appealed directly to this court in accordance with Supreme

Court Rule 302(a) (134 Ill. 2d R. 302(a) (providing for direct appeals from final judgments in cases where a statute has been held invalid)). The matter was fully briefed by the parties. Included for our review was whether the circuit court erred in (i) finding the action untimely, (ii) holding in favor of Ralph on the merits, (iii) declaring part of section 14(b) unconstitutional, and (iv) ordering current child support in an amount less than the statutory guidelines. 750 ILCS 5/505(a) (West 1992). Ralph thereafter filed a motion to strike the current support issue on the grounds that it was "never appealed by [Barbara] under Supreme Court Rule 302." Both Barbara and the Attorney General responded in writing. After taking the motion with the case, we then proceeded to entertain full oral argument. A motion for leave to file supplemental authority and a response thereto were subsequently filed during the pendency of our advisement. Thus, the only matter remaining was the issuance of our decision.

However, without any forewarning to the parties, the majority has now chosen instead to embark upon an unnecessarily obtuse, interpretive journey into the otherwise plain and simple language of Rule 302(a), only to conclude that the instant matter should be disposed of without reaching any of the issues presented to this court. Having "technically" found that jurisdiction exists (see 172 Ill. 2d at 424), the majority does a surprisingly abrupt about-face and declines jurisdiction simply because the parties have presented more than a single, constitutional issue for our review. As a result, the court proceeds in the unusual course of vacating that portion of the circuit court's order which held section 14(b) unconstitutional—a course that is unusual in that a court ordinarily will dismiss an appeal if the court has declined jurisdiction.

The majority further complicates matters by re-

manding the now amputated order back to the circuit court (once again after having declined jurisdiction) for the needless task of reentering its prior order, as modified. The majority apparently believes that in doing so it can resuscitate—by judicial sleight-of-hand—the long since expired appeal rights under Supreme Court Rule 303 (134 Ill. 2d R. 303). However, the majority does not explain why it requires the parties to jump through additional procedural hoops instead of summarily *transferring* the matter directly to the appellate court under Supreme Court Rule 365 (134 Ill. 2d R. 365). A simple transfer of the case would, of course, obviate the need for refiling the record and paying a second, unnecessary filing fee. It would also permit a more expeditious review and resolution of the issues. Regardless of how one reads the opinion, precious little has been accomplished.

The shortsightedness of the majority's machinations becomes even more pronounced upon examination of the reasons offered by the majority in support of its declination of jurisdiction. According to the majority,

"Our jurisdiction would be nonproblematic had the case involved only denial of retroactive support solely because the section was ruled unconstitutional. Complicating matters are the alternative, nonconstitutional reasons given for denying the support and the aspect of the case concerning current support." 172 Ill. 2d at 424.

The majority continues that "Rule 302(a) is not expressly designed to confer interlocutory jurisdiction" and therefore this appeal should not be decided.

Aside from the rather dispositive fact that this appeal does not even involve interlocutory jurisdiction, it is somewhat surprising that the majority is apparently prepared to overrule, *sub silentio*, precedent of recent vintage. Only two months ago, this court allowed an appeal of an interlocutory order under Supreme Court Rule 302(a), noting that "where the order appealed from rests on a finding of a statute's unconstitutionality, this

court has assumed jurisdiction under Rule 302(a), notwithstanding the finality requirement." *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 516 (1996), citing *Garcia v. Tully*, 72 Ill. 2d 1 (1978). Because the appeal here stems from a final order of the circuit court, any reliance by the majority upon interlocutory jurisprudence is misplaced, and further discussion of interlocutory jurisdiction in this dissent would be superfluous.

Nevertheless, the majority further submits that our scope of review is not "to be tailored to particular issues." Yet it is precisely because this appeal has not been tailored to a particular issue, *i.e.*, the constitutionality of section 14(b), that the majority declines jurisdiction. See 172 Ill. 2d at 424 ("Our jurisdiction would be nonproblematic had the case involved only denial of retroactive support solely because the section was ruled unconstitutional"). Ordinarily, this inherent contradiction between the majority's statement that Rule 302(a) review is not to be tailored to particular issues, and its ultimate disposition of this case on the grounds that this appeal presents more than a single nonconstitutional issue, would be sufficient in and of itself to refute the majority's argument, and my dissent could end here. However, because the majority's decision, perhaps unwittingly, has disturbing consequences for future appeals under Rule 302(a), I believe additional comment is warranted.

The majority asserts that the existence of the nonconstitutional issue of current child support, as well as the alternative nonconstitutional grounds for disposing of the issue of retroactive support, "affects—in an unnecessary and largely negative way—the scheme of appellate and supreme court review." This argument is predicated upon the fact that this court, which is "otherwise a court of permissive review," "must contend

with those issues, ones the court might have elected not to address." 172 Ill. 2d at 426, citing 155 Ill. 2d R. 315. As the majority states, "[f]inding section 14(b) to be unconstitutional here was like letting the proverbial camel's nose into the tent; that done, it is impossible to keep out the rest of the beast." 172 Ill. 2d at 425.

Thus, because the majority apparently would not have reviewed the issue of current child support—as well as the nonconstitutional bases for denying retroactive support—had those issues arrived dressed in a petition for leave to appeal under Rule 315, it elects not to decide any of the issues in this case. It does so despite the fact that a statute has been held unconstitutional. However, by incorporating the analysis for *permissive* review under Rule 315 into the present equation, the majority has so limited our review under Rule 302(a) that, hence forth, under the majority's analysis, only the neatly packaged, single-issue constitutional case is ripe for our review, absent a determination by this court that consideration of the constitutional issue is not foreclosed by other issues in the case. As a result, the majority has rendered the full measure of Rule 302(a) anemic.

Unfortunately, such a narrow approach to Rule 302(a) jurisdiction not only ignores the realities of multifaceted litigation, but it also disregards the fact that this court has, on previous occasions, reviewed nonconstitutional and/or collateral issues under Rule 302(a). For example, in *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460 (1994), cited by the majority, the circuit court of Lake County held section 1.25 of the Wildlife Code (Ill. Rev. Stat. 1991, ch. 61, par. 1.25) unconstitutional, and the State appealed directly to this court. During the course of the appeal, we determined, *sua sponte*, that a nonconstitutional basis existed by which we could affirm the circuit court. Contrary to

today's decision, we accepted jurisdiction in *Waller*, ruled on the nonconstitutional ground, declined consideration of the constitutional issue, and affirmed the circuit court.

Similarly, the fact that a case may present some issues for our resolution which, standing alone, are not themselves reviewable under Rule 302(a) does not mean that the presence of those issues thwarts this court's jurisdiction when they are part of final judgment holding a statute unconstitutional. To the contrary, in *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410 (1996), the circuit court of Sangamon County had held, *inter alia*, that the Illinois Use Tax Act (35 ILCS 105/1 *et seq.* (West 1994)), as applied to a certain taxpayer, contravened the commerce clause of the United States Constitution. U.S. Const., art. I, § 8. However, the circuit court's finding that the statute was unconstitutional "as applied" was not in and of itself appealable under Rule 302(a). See *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504, 508-09 (1992) ("[s]uch an order does not declare a statute unconstitutional; it simply declares that application of that statute would violate a particular defendant's constitutional rights. An appeal from such an order is properly brought in the appellate court pursuant to Rule 301 (134 Ill. 2d R. 301)"), *overruled in part on other grounds*, *Wilson v. Department of Revenue*, 169 Ill. 2d 306 (1996). This court nevertheless resolved the "as applied" challenge in *Brown's Furniture* under Rule 302(a) because the circuit court had also held the Illinois Use Tax Act unconstitutional on its face. That latter finding was sufficient to sustain our jurisdiction, and nothing prohibited us from reviewing all of the issues presented.

Perhaps the most troubling aspect of today's decision, however, is the fact that the majority does not define the standards by which this court will exercise its discretion under Rule 302(a) in declining jurisdiction in

future appeals. The majority's opinion teaches us that judicial economy is not a consideration; that notion has been summarily rejected by the majority. See 172 Ill. 2d at 425 ("the nonconstitutional issues might be addressed by invoking the interests of judicial economy. There are better reasons not to do so").

The majority also informs us that fairness to the parties is not a consideration. There is simply nothing fair about an eleventh hour rejection of an appeal which sends the parties back to the circuit court for reentry of an order, only so that they may scurry off to the appellate court to have the issues, already briefed and argued before this court, briefed and argued again. In fact, under the majority's remandment, the appellate court may very well reverse the circuit court's decision on the current child support issue as well as the nonconstitutional issues and remand the matter for further proceedings. At that point, the circuit court might undertake the perfunctory task of reentering its judgment holding section 14(b) unconstitutional. The parties could then appeal again directly to this court under Rule 302(a) with a new order that has by then been laundered of all nonconstitutional issues. Under today's decision, only then will we review the constitutionality of section 14(b).

If judicial economy and fairness to the parties are not to be the benchmark of the majority's *permissive* review under Rule 302(a), then what are the standards by which this court will exercise its ill-defined discretion in future appeals? The majority offers no guidance to litigants as to whether they should appeal to the appellate court or to this court in cases which involve more than an isolated constitutional challenge. More important, the majority fails to explain why we should frustrate our own review of a constitutional issue simply because a circuit court has entered judgment on all of the issues in the case.

The absence of such an explanation only serves to highlight the circular reasoning of the majority's logic. Rule 302(a) by its terms specifically requires that appeals be from a *"final judgment*[ ]" of the circuit court. In other words, in order for an appeal to lie in this court under Rule 302(a), the circuit court must, by rule, enter judgment on all of the issues in the case. And yet when the circuit court does so, it thereby precludes our review under Rule 302(a), according to the majority's approach, precisely because it has ruled on the other nonconstitutional issues. This cannot be so.

Therefore, for all of the above reasons, I cannot join in the majority's recognition and subsequent declination of jurisdiction. Instead, consistent with prior precedent, and in the interests of judicial economy, I would have decided this appeal and, as is the usual case, ruled first on the nonconstitutional issues. See, *e.g.*, *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460 (1994). Then, only if necessary, would I have reached the equal protection challenge to section 14(b) of the Illinois Parentage Act. But either way, this case would have come to its deserved end rather than be sent back to the circuit court so that it may begin a new odyssey before the appellate court.

I respectfully dissent.

CHIEF JUSTICE BILANDIC joins in this dissent.